[Crim. No. 665.    Department Two. — December 4, 1901.]

THE PEOPLE, Respondent, v. ROBERT BISHOP, Appellant.

CRIMINAL LAW — BURNING HOUSE TO DEFRAUD INSURERS — EVIDENCE — HOLES BORED IN FLOOR — ADMISSIBILITY OF BRACE. — Upon the trial of a defendant charged with burning his dwelling-house with intent to defraud the insurers of the property, where it was proved that after the fire was extinguished upon the lower floor, holes were found bored in the upper floor, with coal-oil poured around them and into them, a brace found in a cupboard in one of the upper rooms, on the day after the fire, by a witness, who was put in charge of the house by the foreman of the fire department, shortly after the fire, is admissible as a circumstance tending to show that defendant had the means at hand with which to bore the holes found in the floor.

ID. — TESTIMONY OF CHIEF OF FIRE DEPARTMENT — PUTTING PERSON IN CHARGE OF DWELLING — UNIMPORTANT EVIDENCE. — Testimony of the chief of the fire department, that he put one of his men in charge of the building after the arrest of the defendant, and charged him not to allow any one to enter unless the chief was present, if not

admissible, is too unimportant to warrant a reversal. The only matter of importance is what the person put in charge actually did.

ID. — ODOR OF COAL-OIL UPON CLOTHES — RULING WITHOUT INJURY. — Where it was proved that, at the time of the fire, coal-oil was found scattered around the floors and articles of furniture in different parts of the house, under circumstances pointing to guilty knowledge on the part of the defendant, evidence was admissible to show that there was odor of coal-oil on the clothes of the defendant when he was arrested; and a further statement of the witness, that there was still a slight odor of coal-oil on some of the garments brought into court and identified, which the court excluded from evidence, is without injury, where the defendant did not move to strike out such statement.

ID. — EXAMINATION OF WITNESSES BY COURT — REMARKS AND SUGGESTIONS — ABSENCE OF OBJECTION OR EXCEPTION — APPEAL — PRESUMPTION. — Where the court cross-examined the defendant and other witnesses of its own motion, and made remarks and suggestions, to none of which acts of the court objection was made, or any exception taken by the defendant, it is too late upon appeal to raise a question as to such matters; and where an objection was taken to the interruption of a witness by the court, and no exception was reserved, it must be presumed upon appeal that the defendant was finally satisfied that the court was right.

ID. — CROSS-EXAMINATION OF DEFENDANT — FORMER TESTIMONY — STEALING OF MONEY FROM VEST — HESITATION AND DIFFERENCE SHOWN BY RECORD. — Where the defendant upon examination in chief testified as to the stealing of money from his vest on the night of the fire, to raise an inference that the thief fired the house, it was competent to cross-examine him fully as to all the facts and circumstances attending the matter, and to show by comparison of his former testimony that his hesitation as to the facts appeared therein by question and answer, and that he testified with hesitation, and differently, at the first trial as to facts narrated by him at the last trial without hesitation. If his former hesitation had not appeared from the record, and his examination in chief did not show his demeanor at the first trial, his demeanor thereat could not be proved by him upon his cross-examination.

APPEAL from a judgment of the Superior Court of Alameda County and from an order denying a new trial.   W. E. Greene, Judge.

The facts are stated in the opinion.

A. L. Frick, and George D. Collins, for Appellant.

Tirey L. Ford, Attorney-General, and Henry A. Melvin, for Respondent.

CHIPMAN, C.—Defendant was convicted of the crime of unlawfully and maliciously burning and destroying his dwelling-house and certain of its contents, situate in the city of Oakland, with intent to defraud the insurers of said property, and was sentenced to imprisonment for five years in the state prison.

It is not claimed that the evidence did not justify the verdict. A new trial is asked on the ground of certain alleged errors committed by the court during the progress of the trial.

1. There was evidence that in each of two of the rooms in the upper portion of the house, in one of which defendant slept, there were two or three holes bored in the floor, and coal-oil was found around them and poured into them. This discovery was made immediately after the fire had been extinguished in the lower story; three of these holes appeared to have been recently bored; one of the members of the fire department was put in charge of the house at the time of the fire and continued in charge for several days. Called as a witness for plaintiff, he was shown a brace, which he identified. He testified that he found it in a small drawer in a cupboard in one of the rooms, and that he first saw it the day after the fire; it was offered in evidence, to which defendant objected as " incompetent, immaterial, and too remote." Witness testified that from the time he took charge there was no opportunity for any one to have put the brace where he found it. He was very fully cross-examined on the matter, from which it appeared that during the fire and the successful efforts to extinguish it other persons might have been in and out of the house, assisting the department; that he took charge of the house by order of the foreman of the fire department, about half-past three o'clock in the morning, the fire having occurred about three o'clock, and that up to the time he found the brace he did not believe any person could have gone into the house and placed it there without his knowing it. While some of these facts came out after the objection was made, there were sufficient facts to warrant the admission of this tool as a circumstance tending to show that defendant had the means at hand with which to bore the holes found in the floor.

2. At the time of the fire, coal-oil was found scattered around on the floors and articles of furniture in different parts of the house, and under circumstances pointing to guilty knowledge

on the part of defendant. A police-officer took defendant and his son into custody, and carried them in the patrol-wagon to the police station, and there searched them. Defendant's clothing was removed from his person, and some of his garments emitted an odor of coal-oil. This officer was called as a witness and identified this clothing, and it was admitted, under some cautionary restrictions of the court, and the witness testified that there was still a slight odor of coal-oil on some of the garments. On cross-examination, defendant's counsel asked the witness if "he knew whether or not these garments have been since the first trial of this case brought into contact with kerosene or coal-oil cans." The court sustained an objection, as not proper cross-examination. After some effort of the prosecution to show that the garments were not where they could have been tampered with, the court stated that it was no use to go on with the proof; that as to this clothing, it had been lying around the court-room, and accessible to men going in and out. If defendant had felt prejudiced by the ruling, he could have had the evidence stricken out as to the odor then on the clothes. He seemed to be content with the statement of the court, and conceding error in the ruling, it was without injury. Evidence as to the odor on the clothing when defendant was arrested was clearly admissible.

3. The chief of the fire department was allowed by the court, over the objection of appellant, to testify that he put one of his men in charge of the building after appellant's arrest, as above stated, and told him not to allow any one to enter unless he, the chief, was present. If it be conceded that this testimony was improperly admitted, still it was too trivial to warrant a reversal for the error in admitting it. The only important thing in connection with the matter was what the person put in charge actually did.

4. Certain errors are assigned, arising out of the court's having cross-examined the defendant after the people and defendant were through with the witness; also, in remarking, when he overruled defendant's objection to a question put to a witness on re-cross-examination, "as a matter of discretion I will allow it for the ends of justice"; also, for cross-examining a character witness, whom the prosecution had not cross-examined, in a manner calculated to convey to the jury the impression that the court was not satisfied with the answers of

witness; also, in cross-examining a witness as to what he said at a former trial, and in suggesting to the district attorney that he examine the transcript of the witness's former testimony; also, in asking counsel for defense if he was not putting a "catch-question" to a certain witness. In none of the instances named did defendant object at the time or take any exception. It is now too late to raise a question as to the matters complained of. If the court asks an improper question, or otherwise commits some supposed infraction of the defendant's rights, it is the duty of counsel then and there to make known his objection and reserve his exception. We cannot otherwise notice alleged errors of the court committed on its own motion, any more than can we notice errors in rulings on the conduct of the case by the people's attorney. It is sometimes a disagreeable duty for counsel to call attention to objectionable remarks of the court in the course of the trial, or to its voluntarily propounding questions to witnesses, or to its criticisms of the conduct of counsel, but fairness to the trial judge demands that his attention be at once called to anything he may do or say, and to reserve an exception should the matter, after such notice, be so left as, in the judgment of the complaining counsel, to prejudice the rights of his client.

In one instance, not alluded to above, the court interrupted a witness, called to prove the good character of defendant, and proceeded to state how general reputation is arrived at. The statement of the court was objected to by defendant, but he did not reserve an exception. We must presume, in such case, that defendant was finally satisfied that the court was right, and in this particular instance defendant got from the witness all he desired, — the witness answering that he knew the general reputation of defendant, and that it was good.

5. In defendant's brief it is stated that the court erred in overruling certain questions asked of defendant, "set forth in defendant's ninth, tenth, eleventh, twelfth, thirteenth, fourteenth, fifteenth, sixteenth, and seventeenth specifications of error."

The learned counsel for defendant in his brief says that some of the examination referred to may have been responsive to the examination in chief, but that some was not; that some portions, at least, "gave both the statements made by the

counsel in the form of questions, at a former examination, and the answers given by defendant upon such former examination that were in no wise proper cross-examination."

It is quite impossible for us to determine, after an examination of many pages of the record, upon what particular specifications defendant relies, some of which he concedes may not be well grounded. The principal point relied on seems to be that the court permitted the district attorney to read portions of defendant's testimony, given at a former trial, which were not in conflict with his testimony at the present trial on material points, and bore no relation to his testimony in chief. (Citing *People* v. *Cole*, 127 Cal. 545; *People* v. *Gallagher*, 100 Cal. 466.) We are not aided by any reference of counsel to the pages of the record where such alleged violation of defendant's rights may be found, and on examination it appears that nearly all of the re-cross-examination went in without objection. In his brief, counsel calls particular attention only to specification 12, and here the objection seems to be more to a remark of the court in making its ruling than to the ruling itself, and as to the remark of the court, no objection was made or exception noted. The question itself was not so material as to have affected the minds of the jury; it was as to one of numerous incidents occurring at the fire, and as to defendant's conduct after he claims to have been aroused by the alarm; and besides, we do not think it was entirely foreign to anything he had testified to on his examination in chief.

6. On cross-examination of defendant, called as a witness in his own behalf, the following proceedings took place: By the district attorney. " Q. Upon the former trial of this case in January, was not the following question put to you? 'Q. How could you look into the vest for the $160, and find it missing, if you did not know where the vest was hanging?' Was not that question put to you, Mr. Bishop, at the trial in January, and did not you hesitate for a considerable period of time,— hesitate to answer? and was not then the question put to you, 'Why do you hesitate'?" Defendant objected to the question, as not cross-examination, and on the further ground that it was "not proper cross-examination of this witness at this time to ask him whether or not he hesitated upon a cross-examination at some other trial of this ca e." The objection was overruled and defendant excepted. The witness answered, "Yes, sir; I

hesitated." Counsel then proceeded: "Q. Was that question put to you? — A. Yes, sir. Q. Did you then answer, 'A. Well, I must have found the vest, or else I could not have put my hand in the pocket'? — A. I don't remember. I think I can safely say that I did not so testify."

The witness had testified that when he went to bed, the night of the fire, he put his vest under his pillow, and that he had $160 paper money — $10 bills — sewed up in the vest; that when he was aroused, he felt under the pillow, and the vest was gone; that it was dark, and he "grabbed up the clothes that were on the floor and ran downstairs. But I put my hand, first of all, under the pillow, and found that my vest was gone." He went downstairs with the clothes he had gathered up, being clad only in his drawers, undershirt, and white shirt. He went back to his sleeping-room and found his vest, and discovered that his money was gone. The purpose of this testimony was to show that he had been robbed, and from this circumstance to raise the inference that some other person — probably the thief — had fired the house. It was on this branch of the case he was closely cross-examined, and having made statements as to where he found the vest, and his statement of the circumstances under which he found it differing somewhat from his statements at the former trial concerning the same matter, the district attorney introduced his former testimony for the purpose of impeachment, and to show that the witness was not to be believed as to this theory advanced as a defense. It is true, the witness had not been examined in chief at the present trial as to his conduct or manner on the witness-stand at the former trial when he was testifying as to his loss of money. But the subject-matter was gone into in the examination in chief, and the loss of his money and the displacement of his vest came out as furnishing a probable explanation for the burning of the house. It was competent to cross-examine fully as to all the circumstances attending so important a matter, and to show, by comparison of his former testimony about that matter with that he was then giving, that he testified with hesitation, and differently, at the first trial, as to facts which were narrated by him at the last trial without hesitation. The record of the former trial showed that he answered after hesitation, for the question was put to him, before he answered, "Why do you hesitate?" And he answered at

the last trial that he hesitated. This circumstance of his hesitating was a part of the question and answer, and so appears by the transcript of his former testimony, and became a part of it, and could properly be brought to the attention of the jury. If the witness, in answering at the last trial, had desired to explain why he hesitated when the matter was first gone into, he had an opportunity to do so. Whether generally and in ordinary cases the attending conduct, appearance, and manner of a witness when he made the impeaching answer can be shown, in addition to the answer itself, — i. e., whether anything more than the fact that certain questions were put to him and certain answers given, — can be allowed as cross-examination, raises a question which is not necessarily presented here. The attending circumstance of the witness's hesitation formed part of his answer, as shown by the record, and was therefore admissible.

Nothing in this opinion is intended to be interpreted as relaxing the rule laid down by this court as to the right of a defendant to be protected from an improper cross-examination which would tend to incriminate him. Section 1323 of the Penal Code provides, in part, that "if he offer himself as a witness, he may be cross-examined by the counsel for the people as to all matters about which he was examined in chief." This provision had very careful examination and interpretation in *People* v. *Arrighini*, 122 Cal. 121. It may be conceded that as defendant was not interrogated in his examination in chief, at the last trial, as to his demeanor when on the witness-stand at the first trial, if the record of his testimony at the first trial had been silent as to his demeanor when testifying about the particular matter the subject of his cross-examination at the last trial, he could not be made to state his conduct and demeanor at the former trial as an independent fact, for it might have been such as to imply guilt. It may be also conceded that even if such circumstance could be shown by the prosecution by other witnesses, called for that purpose, still, it could not be shown by a cross-examination of the defendant himself. But, as we have seen, the record of the former trial shows that his demeanor in answering a particular question became a part of his answer and inseparable from it, — in a sense, was *res gestæ*, — and could be shown by the witness himself as part of his former answer.

CXXXIV. Cal.—44

Discovering no prejudicial error in the proceedings, it is advised that the judgment and order be affirmed.

Haynes, C., and Gray, C., concurred.

For the reasons given in the foregoing opinion the judgment and order are affirmed.       Henshaw, J., McFarland, J.

TEMPLE, J., concurring.—I concur in the judgment, but in my opinion the examination of the defendant as to his demeanor while testifying upon a former trial ought not to have been allowed. It was not, however, as to a matter of much importance, and I think it could not have prejudiced the case of defendant.

As to numerous remarks made by the judge during the trial, I wish to say, that, in my judgment, the best plan is to let the prosecuting attorney attend to the case of the people. The judge should be indifferent, except in a desire to conduct the trial according to the rules of law, and he serves the cause of justice best when he is so. In this case I have some doubt as to what should be done, but am disposed to yield to the more positive convictions of my associates that there was no substantial injury.

Hearing in Bank denied.