STATE OF NEW JERSEY, DEFENDANT IN ERROR, v.
AARON DICHTER, PLAINTIFF IN ERROR.

Submitted July 5, 1920—Decided November 15, 1920.

1. In the trial of an indictment for receiving stolen goods it is proper for the trial court to overrule a question asked of a witness to elicit a self-serving statement made by the defendant.

2. A witness for the defendant in the trial of an indictment for receiving stolen goods may be asked questions for the purpose of contradiction concerning statements relating to the case made by the witness when the defendant was not present.

3. A witness who is questioned for the purpose of contradiction concerning a statement alleged to have been previously made by him relating to the case and who denies the making of the statement as recited in the question addressed to him is not entitled to give his version of what occurred until after his answer has been contradicted.

4. It is immaterial whether a witness comes to court voluntarily or by process of subpœna, and it is proper for a trial court to overrule a question asked for the purpose of eliciting the information as to whether a witness came to court voluntarily or involuntarily.

5. In the trial of an indictment for receiving stolen goods questions asked of a witness called by the defendant as to the results of his efforts in attempting to sell the stolen goods for the defendant would not be evidence as to their market value, and were properly overruled by the trial court.

6. If a witness for the defendant is asked for the purpose of contradiction a proper question embodying a statement made by the witness relating to the case which may be harmful to the defendant, the fact that the question does contain a statement which may be harmful to the defendant is no ground for the overruling of the question.

7. If counsel for the defendant in the trial of an indictment for receiving stolen goods asks in his examination of the defendant the question, "When was the first time you discovered these goods were stolen?" this is a sufficient admission that the goods were stolen to justify the statement in the charge of the court that "the defendant's counsel admits that the goods were stolen."

8. A court in its charge to the jury has a right to comment on the evidence, and it is not error for the court to use language which is argumentative.

9. In the absence of a request to the court to instruct the jury upon some legal principle applicable to the case, it is not error for the court to have failed to give such instruction.

10. A defendant who without objection goes to trial upon an indictment charging him with several separate and distinct offences, cannot, after conviction, raise the question as to the form of the indictment.

On writ of error to the Supreme Court.

For the plaintiff in error, *Edward Schoen.*

For the defendant in error, *J. Henry Harrison*, prosecutor of the pleas, and *John A. Bernhard*, assistant prosecutor.

The opinion of the court was delivered by

KATZENBACH, J.　Aaron Dichter, the plaintiff in error, the defendant below (and hereinafter referred to as the defendant) owned and conducted a drug store in the city of Newark. He purchased a large quantity of rubber bands, lead pencils and erasers from a man named Gluthe, who was a watchman at the Newark plant of the Faber company, the manufacturer of the articles purchased. Gluthe had stolen the goods and sold them to Dichter at prices far below their market value. Gluthe was indicted jointly with Dichter and entered a plea of *non vult.* Dichter was tried and convicted of receiving the goods, knowing them to have been stolen. He took a writ of error to the Supreme Court which affirmed the judgment. He then sued out a writ of error to this court which he now prosecutes. The assignments of error are thirty-three in number and relate to the admission of improper testimony, the exclusion of evidence, alleged error in the charge of the trial court, failure of the trial court to properly instruct the jury, the violation of the defendant's constitutional right, and the alleged lack of evidence of the defendant's guilt.

The assignments of error will be considered in the order presented in the brief of counsel for the defendant.

The first assignment is the refusal of the trial court to permit the defendant to ask Fred. H. Thompson, a witness

for the state, upon cross-examination, the following questions:

"*Q.* Did you ask where he got them?

"*A.* Yes.

"*Q.* Did he tell you where he got them?

"*A.* Yes.

"*Q.* What did he tell you?"

This last question was objected to on the ground that it was immaterial what the defendant told the witness The objection was sustained. Thompson had purchased some of the stolen goods from Dichter. The state sought to prove by Thompson that he paid Dichter for the goods such a substantial increase over the price paid by Dichter to Gluthe that the jury might consider this fact in connection with Dichter's knowledge of the value of the goods. This line of examination afforded no warrant for the introduction in evidence of what Dichter said at the time of Thompson's purchase. The question was not proper cross-examination. The answer would have been a self-serving statement of Dichter. The exclusion of this evidence by the trial court was proper. *Cook* v. *State,* 24 *N. J. L.* 843; *State* v. *Unsworth,* 85 *Id.* 237.

The next assignments of error relate to two questions which the trial court permitted a witness by the name of Migatz to answer over defendant's objection. The following are the questions:

"*Q.* Did you tell Mr. Brex yesterday afternoon after he had been on the witness stand that he ought not to have told the court and jury that you gave him the information about who had purchased these goods, yes or no?"

"*Q.* Didn't you tell Officer Smith in the corridor of this court room yesterday afternoon, in the presence of Mr. Brex —did you say, 'Officer, you ought not to have told the court and jury that I gave you the information of persons who purchased the goods from Dichter?'"

The purpose of these questions was to lay a foundation for the contradiction of Migatz. The objections made are that

Migatz was a witness for the state and the state could not lay a foundation for the contradiction of its own witness, and that the question related to a conversation not in the presence of defendant and was upon a collateral matter. The record shows that Migatz was a witness for the defendant and not a witness for the state. The state had the right to lay upon cross-examination the foundation for a contradiction of the defendant's witness. There is no merit in the contention that the conversations had to be in the presence of the defendant to make the questions admissible.

A witness can be asked for the purpose of laying a foundation for his contradiction concerning statements made by him relating to the case when not made in the presence of the defendant. The questions were properly allowed.

The next assignment relates to the refusal of the trial court to permit the witness Migatz to answer on redirect examination the question: "Tell us what did happen between Mr. Brex and Mr. Smith yesterday afternoon?" To the previous questions asked, Migatz had answered in the negative. Counsel for defendant contend that this opened the door for Migatz to give his version of the conversation. This question had been put to Migatz before Brex and Smith were called, as they were later in the case, to contradict Migatz. The question was inopportune and could not properly be asked until the answers given by Migatz were contradicted by Brex and Smith. When Migatz's answers were contradicted later by Brex and Smith, Migatz was then permitted to give in rebuttal the testimony which he had been precluded from giving by the ruling of the trial judge. We think the refusal of the trial court to permit Migatz to answer the question proper at the time it was made.

The next assignment is the refusal of the trial court to permit a witness, Halpern, to be asked the question: "How did you come to come to court this time?" The witness was the defendant's witness. The defendant desired to show whether he came voluntarily or involuntarily. This was immaterial. The trial court was correct in overruling the question.

Assignments Nos. 6, 7, 8 and 9 will be considered together as they all involve the same question, viz., the propriety of the refusal of the trial court to permit a witness, Stickle, to answer the following questions:

"*Q.* What did you offer to sell her?"

"*Q.* Could you sell them for a dollar a pound that you asked?"

"*Q.* What was the price you offered them at?"

"*Q.* How long did you try to sell them?"

Stickle was a patent medicine salesman who was employed by Dichter to sell the goods which he had purchased from Gluthe. The defendant contends that as the jury were instructed that "The value of the goods and the price paid are generally important because they throw some light on the question of knowledge," that Dichter was entitled to the evidence of Stickle, who went out to endeavor to sell the goods for Dichter, on the question of value.

To the question, "What did you offer to sell her?" no exception was taken to the ruling of the trial court. To the other three questions, exceptions were duly taken. Stickle had not qualified as a witness on the market value of the rubber bands, lead pencils and erasers. The questions were not framed to elicit information as to what the market value of the goods were if Stickle had been qualified to answer. They asked Stickle to give the results of his efforts in attempting to make sales. These results would be no evidence of the market value of the goods at the time they were purchased by Dichter. The trial court was correct in its ruling, excluding this evidence.

The next assignment relates to the ruling of the trial court in permitting the following question to be asked of Brex, a witness for the state: "Did or did not Mr. Migatz, at the time you had the conversation with him, state to you that the reason he did not buy any more rubber bands from Dichter was because it did not look right to him?" The foundation for this question had been laid on cross-examination of Migatz who said he did not remember having made such a statement. It was, therefore, for the purpose of con-

tradiction proper for the state to call Brex and show by him that it had been made, as we have before said in considering like assignments of error. It is also contended that this question was particularly harmful to Dichter as it conveyed to the jury Migatz's impression of the transaction. This is probably so, but if the question was admissible for the contradiction of Migatz, Dichter cannot complain of its harmful effect. A competent question is not to be excluded because its admission may be harmful. *State* v. *Young,* 93 *N. J. L.* 396.

The next assignment relates to the propriety of the trial court permitting Brex to answer the question, "Did or did not Mr. Migatz come to you, after court had adjourned, and state to you that you ought not to have told in court where you got the information from?" This question was of the same character as those heretofore considered. We think them proper for the purpose of contradiction of Migatz. Counsel for Dichter contend that the Supreme Court held in its opinion that to permit this question to be asked and answered constituted legal error but a reversal was denied because the ground of the objection "did not present to the trial court the legal impropriety of the examination." The decision of the Supreme Court was based upon the belief that Migatz was the state's witness. The opinion so states in this sentence, "We think if proper objection had been entered to this line of testimony, its admission would be erroneous, since the state was bound by the answer of its witness upon a collateral issue." This belief of the Supreme Court was due no doubt to the same statement being made in the brief submitted to the Supreme Court as contained in the brief filed in this court for the defendant, which says: "The witness, Migatz, was a state's witness." Migatz was not the state's witness. The record shows that the state rested and then appears the following: "Harry Migatz, being duly sworn according to law, on behalf of the defence, testified as follows." The opinion of the Supreme Court was written under the misapprehension that Migatz was a witness for the state and not for the defendant, Dichter.

The next assignment relates to a like question asked of the state's witness, Smith, in contradiction of Migatz. For the same reasons we think this question proper and the testimony admissible.

The next assignment relates to the following portion of the charge, viz.: "In this case the defendant's counsel admits that the goods purchased by the defendant were stolen from the Faber company by Gluthe." The defendant now contends that he suffered a great wrong by this portion of the charge because there is nothing in the case to show that such an admission was made by his counsel and that the goods purchased by Dichter were stolen was an essential matter to be proved by the state. It seems strange that if such an admission had not been made the defendant's counsel did not take an exception to this part of the charge. The record shows no exception. The argument in behalf of the defendant is based on the ground that the record contains no evidence of such an admission. The opening and closing addresses of Dichter's counsel are not made a part of the record and it would be likely that such an admission if not formally entered on the record would be found in these addresses. It is not necessary, however, to consider the question discussed in the briefs as to whether the state is bound by the record submitted to this court because an examination of the record as it exists discloses that Dichter's counsel admitted by the very questions asked his client that the goods were stolen. For example, on the redirect examination of Dichter, the first question put to him by his counsel is, "When was the first time you discovered these goods were stolen?" This is a sufficient admission by Dichter's counsel that the goods were stolen to justify the portion of the charge of the trial judge now complained of.

The next assignment of error relates to portions of the charge of the trial court. The first three will be considered together. The parts criticised are as follows:

"The mere statement by the thief that the goods offered for sale were not stolen is not sufficient to relieve the purchaser from the responsibility imposed by the law upon one who receives goods under suspicious circumstances.

"Under the law, the receiver may be convicted on this indictment if you find he received any of the goods referred to in this indictment, knowing that that part was stolen. It is not necessary for the state to prove that the defendant knew that all of the goods were stolen at the time that he received them.

"If you find beyond a reasonable doubt that any part of the goods mentioned in the indictment were received by the defendant, knowing that they were stolen, it would be your duty to convict.

"The fact that Mr. Thompson and others purchased the goods from the defendant does not relieve him from his obligation since the buying of such things from a druggist like defendant might be different than buying from a man like Gluthe."

We feel that no comment is necessary upon these parts of the charge other than to say that in our opinion they correctly state the law and under no circumstances can they be said to have been harmful to the defendant.

The next assignment relates to this portion of the court's charge: "Should he have known that they were stolen from the circumstances surrounding the transaction?" It is contended that the court should have said, "Did he know that they were stolen from the circumstances surrounding the transaction." This distinction seems to us to be fanciful and without merit. The language used was as favorable to the defendant as the language suggested.

The next assignment relates to the following portion of the charge:

"Do you believe that he thought he saw an opportunity to make money, and in his desire to make money, closed his eyes to facts and circumstances that would have been apparent to a man of ordinary intelligence and caution?"

The error alleged is that it is argumentative. Assuming that it is, it is the settled law of this state that a court has the right to comment upon the evidence. *State* v. *Hummer*, 73 *N. J. L.* 714.

The next assignment relates to the action of the trial court in the following colloquy:

"*Q.* Did anybody. from my office give you a subpœna to come here?

"*A.* No, sir.

"The Court—What difference does it make? You are calling him as your witness.

"Mr. Lesser—The state has brought him here, and has not seen fit to put him on the stand.

"The Court—That is entirely improper, and I caution you not to repeat that remark, and I ask the jury to disregard it."

The contention is made that the question was proper, the reply of counsel to the court proper and the court's statement to the jury improper and prejudicial to the defendant. We think the question improper as it is immaterial whether a witness comes to court voluntarily or by process of subpœna; the comment of counsel improper and the instruction of the court to the jury to disregard the remark of counsel proper.

The remark of the court was directed only to the remark of counsel and did not instruct the jury to disregard the answer to the question as contended, although the court might properly have done so.

The next assignment relates to the following questions and answers:

"*Q.* When you went to the police court and identified Mr. Gluthe, do you remember making a statement at that time that the whole thing looked crooked?

"*A.* That what?

"*Q.* That the whole thing looked crooked?

"*A.* At that time it did.

"*Q.* You did make that statement?

"*A.* Yes."

No objection was made to these questions and answers. In the absence of objection made at the trial to the testimony this assignment cannot be considered. It was held in *State v. Hummer,* 81 *N. J. L.* 430, that the phrase in the one hundred and thirty-sixth section of the Criminal Procedure act, "admission or rejection of testimony," imports judicial action and a judgment will not be reversed for refusal of the trial

court to strike out testimony elicited by a question to which no objection was made.

The next four assignments relate to the failure of the court to charge the jury on certain matters, as for example, failure to charge that the testimony of an accomplice should be scrutinized with care. Not one of the matters of which the defendant now complains the trial court failed to charge was the subject of a request to charge made by the defendant. A defendant cannot avail himself of a failure of the trial court to include in its charge some principle which may apply where no request was made to the court to so instruct the jury. *State* v. *D'Adame,* 84 *N. J. L.* 386.

The next assignment of error is the alleged violation of the constitutional rights of the defendant by charging him with several separate and distinct offences in one indictment. It is not necessary to examine the indictment to determine whether this complaint is well founded or not. The defendant made no motion to quash the indictment or motion in arrest of judgment. If the indictment is faulty, he accepted trial thereunder without objection. Having accepted trial under the indictment as drawn, the defendant cannot now raise a question as to its form. We are not referred by counsel to any right of the defendant under the constitution which has been violated and we know of none. We see no merit in this assignment or the concluding one which is that the defendant was held to answer for a criminal offence without indictment of the grand jury. This concludes our review of the assignments of error considered in the defendant's brief. We have examined them all with care, and find no ground for reversing the judgment rendered in the Supreme Court, which was an affirmance of the defendant's conviction.

We, therefore, affirm the judgment of the Supreme Court.

*For affirmance*—SWAYZE, TRENCHARD, PARKER, BERGEN, KALISCH, KATZENBACH, WHITE. HEPPENHEIMER, WILLIAMS, TAYLOR, GARDNER, ACKERSON, JJ. 12.

*For reversal*—None.