[Crim. No. 3866. In Bank.—March 31, 1936.]

THE PEOPLE, Respondent, v. IRWIN B. OTTEY, Appellant.

J. W. Lenahan and John H. Thomsen for Appellant.

U. S. Webb, Attorney-General, and Seibert L. Sefton, Deputy Attorney-General, for Respondent.

SHENK, J.—The defendant was charged by information with the murder of his wife, Oreane Ottey, committed on

October 31, 1934, in Monterey County. He pleaded not guilty and not guilty by reason of insanity. A jury found him guilty of murder of the first degree without recommendation. On the issue raised by the plea of not guilty by reason of insanity, the defendant was found to have been sane. From the judgment imposing the death penalty and from the order denying his motion for a new trial, the defendant has appealed.

The defendant urges, as grounds for reversal, insufficiency of the evidence to sustain the degree of the crime found by the jury, alleged errors committed by the court in the conduct of the trial and in its comments on the evidence and the credibility of the witnesses, and error in the denial of the motion for a new trial.

The defendant and the decedent had been married for about three years and lived in Monterey. In accordance with his wife's desire the defendant had procured his discharge from the United States army, and the parties lived in the home then being acquired by the defendant under a contract of purchase. Previous to his discharge from the army the defendant, who had received medals for expert marksmanship in gun practice, had been assigned to duty as a military police in Monterey. At the time of and before the homicide he had been working as a deputy for the sheriff or the constable in Monterey County. In connection with his duties he was permitted to carry firearms. Some time prior to October, 1934, because of the defendant's lack of employment, he and his wife moved out of the defendant's house and rented it, and occupied cheaper quarters. The wife continued as an office employee in Woolworth's store in Monterey. In 1933 the parties disagreed and separated, but were subsequently reconciled and lived together in a rented apartment until the first part of October, 1934, when another separation occurred. The defendant testified that after a week or so they again became reconciled, agreed to return to each other, and that the only difference then between them was the defendant's desire to give the tenants in his house notice to move so that they could reoccupy it, and the wife's preference to live downtown in an apartment.

October 31, 1934, was the defendant's birthday. He testified that he telephoned his wife at Woolworth's and asked her to dine with him and spend the evening together. She indi-

cated that she had other arrangements for the evening but made a luncheon engagement with him. About 12 o'clock that morning the defendant went to the office at Woolworth's and talked with the decedent. A witness saw the defendant go down on his knees to his wife and make a request accompanied by the words, "Please, Honey", to which the wife replied that they would not then discuss the matter. The defendant testified that his request was that she go back and live in his house. He then went out and waited in his automobile parked across the street until the decedent come out at 1 o'clock. She proceeded across the street and after a few minutes' conversation, they walked to a Chinese restaurant a few blocks away which they, and especially the wife, had previously patronized. Witnesses who observed them testified that they both seemed in good spirits and in an amiable mood. They entered a booth in the restaurant. A few seconds later, while the waitress was carrying water to the booth, screams were heard and a cry "Help, help!" in a woman's voice. The waitress backed into the kitchen and heard three shots fired. A fourth shot was heard when the waitress went to the cook in the yard back of the restaurant. The cook and the waitress then reentered the restaurant by the front door, when the waitress heard the defendant in the booth mutter, "Honey, I had to do this". While a call was being put in for the police two more shots were fired in the booth. One witness saw the defendant put the gun to his own head after three shots were fired. The wife was carried out of the restaurant dead, with two bullet wounds in her head, which showed that the gun had been fired at a distance of about two inches, and a bullet wound through her wrist. When confronted by the police officers the defendant was covered with blood. He dropped his empty gun and asked, "Didn't I do a good job of it?", expressing a wish to die. He had a wound in his head and another through the palm of the left hand. Upon the approach of one of the officers the defendant stated, "I shot my wife and myself", to which the officer replied, "I know you did."

At the trial the defendant attempted to minimize the effect of the foregoing circumstances and declarations by testifying that his wife's wounds were caused by the accidental discharge of the gun in his hands in the course of a struggle for its possession by her when the defendant made a threat

to kill himself. On the foregoing facts, however, the jury were amply justified in concluding that the wounds received by the wife were not the result of accidental discharge of the weapon, but that the homicide was premeditated and intentional, even though they also found that the intent was not formed until a few seconds before it culminated in the actual shooting. In addition, there was evidence of prior threats made by the defendant on the life of his wife and that she had a fear of living in his house with firearms in it and of conversing with him after a separation from him while he was armed. There was also testimony of prior admission by the defendant of previous mistreatment of his wife. From the nature of the wounds the jury might believe that there was an undirected discharge of one shot which passed through the decedent's wrist while the defendant had hold of it with his left hand, but it is not conceivable that the jury could rationally conclude that the two wounds in her head, caused by shots fired at such close range, were anything less than the result of a deliberate intent to take her life. ■ In such a clear case of justification in the evidence for the jury's verdict of first degree murder we may not accede to the defendant's request to exercise the discretion reposed in this court by section 1181 of the Penal Code and reduce the crime to one of lesser degree or of manslaughter as was done in the case of *People* v. *Kelley,* 208 Cal. 387 [281 Pac. 609]. (*People* v. *Adams,* 199 Cal. 361 [249 Pac. 186] ; *People* v. *Murphy,* 1 Cal. (2d) 37 [32 Pac. (2d) 635] ; *People* v. *Ramos,* 3 Cal. (2d) 269 [44 Pac. (2d) 301].)

In view of the foregoing conclusion but little need be said in disposing of the defendant's contentions that the court committed error which prejudiced the defendant in the conclusion which the jury might reach on the nature or degree of the homicide, or in the exercise of its discretion to return its verdict without recommendation.

■ Prejudicial error in a question asked by the court during its examination of the defendant is urged. The defendant took the stand in his own behalf and after direct and cross-examination by counsel the court asked the defendant questions designed to inquire into his reason for calling on his wife about an hour before he expected to have luncheon with her. The question objected to is, "That is your story, is it?" From the whole context of the examination by the court we

are unable to perceive that the jury received the intimation that the word "story" was used in the vulgar sense of an incredible tale. In fact, the court's examination but served to develop a plausibility for an added reason given by the defendant for his preluncheon visit to his wife, viz., his desire to prevail upon her to change her decision and have dinner and spend the evening with him on his birthday, rather than merely to have luncheon with him. Furthermore no objection to this line of examination by the court was taken at the time and it is too late to urge it as error for the first time on the appeal. (*People* v. *Mendez,* 193 Cal. 39, 47, 48 [223 Pac. 65] ; *People* v. *Bishop,* 134 Cal. 682, 686 [66 Pac. 976] ; *People* v. *Santos,* 134 Cal. App. 736, 748 [26 Pac. (2d) 522].) Neither this nor other instances of examination by the court were objectionable in the sense defined in the cases of *People* v. *Boggess,* 194 Cal. 212, 241 [228 Pac. 448], and. *People* v. *Golsh,* 63 Cal. App. 609, 614, 615 [219 Pac. 456], nor was any of them objected to at the time by the defendant. ■ The questions asked by the court were propounded merely for the purpose of eliciting the truth and all, with the possible exception of the question, "Well, did you ever try to kill her before this?" were proper. As to this question, a sufficient answer is that no objection was made to it or to its form at the time. As stated in *People* v. *Golsh, supra,* page 615, the court's primary duty is to see that justice is done, both to the accused and to the People. The court is not powerless to ask a defendant who takes the stand on his own behalf questions designed to elicit facts unfavorable to his defense, provided his constitutional rights are not infringed, and no violation of his rights is indicated by the conduct of the court in this respect.

■ The court instructed the jury that in order to constitute murder of the first degree the intent to kill must be the result of deliberate premeditation; that if the act of killing be preceded by and the result of a concurrence of will, deliberation and premeditation, the killing is murder of the first degree, no matter how rapidly these acts succeed each other or how quickly they may be followed by the act of killing; "but if you find the defendant guilty of murder and still are not convinced, beyond a reasonable doubt, that such murder was accompanied or characterized by *some one* of the circumstances just explained as indicative of murder in the

first degree, you can find the defendant guilty of murder in the second degree only". The defendant predicates prejudicial error in the use of the language "some one", rather than language indicating the presence conjunctively of the elements of will, deliberation and premeditation as used in the code section (sec. 189, Pen. Code), and in the first part of the charge. The effect of the language used by the court was to define the elements constituting the degree under discussion in the disjunctive, rather than in the conjunctive. In *People* v. *Pool*, 27 Cal. 572, this was held not to be error, inasmuch as the three elements are severally expressive of the same thing and may be regarded as cumulative. The record does not indicate any prejudice to the defendant's rights by the use of the words complained of.

■ The defendant lays particular stress on alleged erroneous comments of the court on the evidence and the credibility of the witnesses as justifying a reversal. In the discussion of this contention we repeat the wording of section 19 of article VI of the Constitution as it read prior to and after the amendment adopted by the People at the general election of November, 1934. Prior to the amendment that section contained the prohibition: "Judges shall not charge juries with respect to matters of fact, but may state the testimony and declare the law." That prohibition had been the law since 1849. At the November, 1934, election the section was recast in the following language: "The court may instruct the jury regarding the law applicable to the facts of the case, and may make such comment on the evidence and the testimony and credibility of any witness as in its opinion is necessary for the proper determination of the case. The court shall inform the jury in all cases that the jurors are the exclusive judges of all questions of fact submitted to them and of the credibility of the witnesses."

There is no merit to the defendant's contention that the amendment does not apply in cases tried subsequent to the amendment involving offenses committed prior to the adoption of the amendment. (*People* v. *Talkington*, 8 Cal. App. (2d) 75 [47 Pac. (2d) 368].)

■ This court has had occasion heretofore to consider generally the scope of the power reposed in the courts of this state by the change in the Constitution. (*People* v. *De Moss*, 4 Cal. (2d) 469 [50 Pac. (2d) 1031].) In view of the exten-

sive research by counsel on the question, as evidenced by their briefs, some further elaboration seems desirable. In the first place it is certain that a very distinct and important innovation in the long-standing rule in this state was brought about by the constitutional amendment. Its purpose was to abolish the prior limitations on the trial judge's participation in the trial of a case with respect to comment on the evidence and on the credibility of the witnesses. In other words, it was the intention to place in the trial judge's hands more power in the trial of jury cases and make him a real factor in the administration of justice in such cases, instead of being in the position of a mere referee or automaton as to the ascertainment of the facts. To the seasoned practitioner in our state courts this so-called radical change has no doubt come with considerable of a shock. None the less the change has been made and it must be recognized as an endeavor to remedy an evil in the trial, especially of criminal cases, by jury. It is the duty of this court to accord to the amendment its full beneficial effect, uninfluenced by decisions in this state under the old law.

It is apparent from the history of the constitutional amendment that its purpose was to establish the rule in this state in substantial harmony with the practice in other jurisdictions where like powers have been exercised by the trial courts. In the argument submitted to the electors at the general election in 1934, in support of the proposed amendment, it was stated: "This measure also enables the trial judge to comment to the jury on the facts of the case; to give the jurors his analysis of the evidence and to express his opinion on the merits of the case, but informing them at the same time, that his views are advisory only, and that the jury is the final and sole judge of the facts and of the guilt or innocence of the accused. This is the practice in the courts of Great Britain and Canada, and also in our United States courts." While the argument sent to the voters is not controlling (*Fay* v. *District Court of Appeal*, 200 Cal. 522, 537 [254 Pac. 896]), it may be resorted to as an aid in determining the intention of the framers and the electorate when such aid is necessary. Here we need not invoke such argument as an aid to interpretation, for the language of the amendment, though brief, is plain and unambiguous; but it may with propriety be noticed to indicate that it was the general understanding that the proposed in-

novation in the practice in this state was intended to conform to the practice in other jurisdictions where similar powers were vested in the trial courts, viz., Great Britain, Canada, and the United States courts. By a reference to the courts in those jurisdictions we are not foreclosed from resorting to decisions in sister states which have adopted the same or similar rules. .

As often as a trial court's action in such cases has been brought into question, it is obvious that no hard and fast rule determinative of what a trial judge may or may not say to a jury in commenting on the evidence and the credibility of the witnesses can be laid down. It is impossible to state in an opinion just what particular comment should or should not be made in all cases. That question must depend, in a criminal case, upon the nature of the charge, the nature of the evidence, and, to some extent, on the arguments of counsel—in short, upon all of the circumstances of the case. "It is impossible, however, from the cases to find the dividing line between what is objectionable and what is not, and to lay down a hard and fast rule by which the doubtful cases can be placed on one side or the other of the dividing line. . . . (reviewing cases.) . . . It is evident from an examination of these cases that each case, in a large measure, stands on its own bottom, except as to the recognition of certain general principles." (*Malaga* v. *United States,* 57 Fed. (2d) 822, 827, 828; *Stokes* v. *United States,* 264 Fed. 18; *People* v. *Lintz,* 244 Mich. 603 [222 N. W. 201].)

It may not be successfully argued that because the language of our constitutional amendment is in itself without limitation as to the comment that may be made by the court on the evidence and the credibility of the witnesses, it must follow that the power thus conferred is without any of the restrictions with which the law of the land surrounds it.

One general principle to be recognized is stated by the Supreme Court of the United States as follows: "This privilege of the judge to comment on the facts has its inherent limitations. His discretion is not arbitrary and uncontrolled, but judicial, to be exercised in conformity with the standards governing judicial office. In commenting upon testimony he may not assume the role of a witness. He may analyze and dissect the testimony, but he may not either distort it or add to it. His privilege of comment in order to give appropriate

assistance to the jury is too important to be let without safeguards against abuses.'' (*Quercia* v. *United States* (May 9, 1933), 289 U. S. 466 [53 Sup. Ct. 698, 77 L. Ed. 1321] ; see, also, *People* v. *Lintz, supra.*)

In England, to which we look as the original source of the rule, the practice is stated by Chitty (Brickwood's Sackett on Instructions to Juries, p. 126 et seq.), to be: ''It is the practice for the judge at *nisi prius* not only to state to the jury all the evidence that has been given, but to comment on its bearing and weight, and to state the legal rules upon the subject and their application to the particular case, and to advise them as regards the verdict they should give.''

In New Jersey, where the English practice has been adopted, it is the duty of the judge to give his views upon the weight of the evidence where he thinks it is required for the promotion of justice; and whether or not he exercises all or any of his rights in that regard in a particular case depends entirely upon his judicial discretion. (*State* v. *Hummer*, 73 N. J. L. 714 [65 Atl. 249].) In Connecticut the exercise of the court's discretion is not reviewable except in a clear case of abuse. (*State* v. *Wade*, 96 Conn. 238 [113 Atl. 458, 461].) In those states and in Michigan and Pennsylvania, as well as for the most part in the United States courts, the extent to which the court shall comment is largely within its own discretion (*State* v. *Journey*, 115 Conn. 344 [161 Atl. 515] ; *Com.* v. *Radzinowicz*, 39 Pa. Sup. Ct. 173; *People* v. *Lintz, supra; State* v. *Grace*, 98 N. J. L. 341 [119 Atl. 767] ; *Quercia* v. *United States, supra*), so long as it exercises that discretion without usurping the functions of the jury as the final arbiters of the facts and otherwise in accordance with the law in force in the particular jurisdiction.

A statement of the general rule worthy of notice is found in *Malaga* v. *United States, supra,* where it is stated at page 828: ''The right of a trial judge to aid the jury in arriving at a just verdict is a valuable and important judicial function in the administration of justice. We have no desire to limit it except within its proper sphere. It is a trite saying, but a true one, that in the interest of justice a judge should be permitted to control the conduct of the case rather than counsel for the litigants. A trial in a court of justice should not be a game over which the judge presides in the capacity of

umpire to see that certain rules are observed, but a proceeding in which a just verdict is the sole aim.

''The trial judge must declare the law governing the rights of the parties and determine what evidence it is proper for the jury to consider under the established rules of evidence. He should also by reason of his training in analyzing testimony, and experience in determining the credibility of witnesses, and the influence that personal interest, bias, and prejudice have in influencing witnesses, be permitted to assist the jury in determining what evidence has a bearing on the disputed issues in the case, and aid them in weighing the evidence, taking care that the jurors clearly understand that it is their own judgment which must finally determine what the facts are. To this end a judge in the federal courts may inform the jury of the impression certain evidence makes on his mind. But having in mind the weight that jurors ordinarily give to the opinion of the presiding justice, he should take especial care that they understand that it is their independent judgment which must finally determine the factual issues, and are not unduly influenced by the opinion of the court.''

The defendant contends that if error is made apparent from the comments by the trial court because in violation of the restrictions and limitations announced in certain cases relied on by him, a reversal is justified without any inquiry into the question whether such error has been prejudicial. We cannot accede to the correctness of such a statement. Section 4½ of article VI of the Constitution is as applicable in the determination of the appeal under the new procedure as it was before the change.

With the foregoing and other pertinent rules in mind we have examined the record. We find therein no indication that the jury's verdict was unduly influenced by the court's comments. On the contrary it may be said that the evidence before us indicates that the jury would have returned the same verdict if the judge had refrained from any comment whatsoever on the evidence and the credibility of the witnesses. In such a state of the record it would be of little if any value to set out in this opinion the full context of the court's comments, which were somewhat lengthy.

There can be no possible objection to the court's stating to the jury the fact of the change in the law and the

source and scope of its right to comment on the evidence in the case and the credibility of the witnesses. The court did this and at the same time cautioned the jury that they were the exclusive judges of the facts and the credibility of the witnesses. The further remark of the court that no appeal should be made to the jury to "disregard the statement of the judge any more than any other thing in the case", is not subject to criticism under the circumstances shown. It was intended as an answer to the argument of defense counsel intimating that the jury should give no heed to the court's comment, if the court should make any; that the jury system "has served us well" and "has been bought at too dear a price to be given up without mature deliberation", and was undoubtedly so understood by the jury. While counsel had the right to, and did, argue to the jurors that the judge's comments were not binding on them and that they were the exclusive judges of the facts, etc. (*Morse* v. *United States,* 255 Fed. 681), it is obvious that counsel went far beyond the scope of permissible argument or accurate statement.

The defendant urges prejudicial error in singling out the defendant's testimony for special comments on the credibility to be accorded it. The court remarked upon the defendant's interest in the case, its opinion on a phase in the testimony that "things don't happen that way", and included a charge that if a witness is deliberately false in one material instance the jury has the right to disregard all of his testimony not shown by other evidence to be true; also "from that you have a right to conclude his statements in this case are wilfully and deliberately false". The remarks cannot be said necessarily to go beyond the bounds of propriety. (*State* v. *Schleifer,* 102 Conn. 708 [130 Atl. 184, 191, 192] ; *State* v. *Warady,* 77 N. J. L. 348 [72 Atl. 37, 38] ; *State* v. *Grace,* 98 N. J. L. 341 [119 Atl. 767, 768] ; *Com.* v. *Orr,* 138 Pa. 276 [20 Atl. 866] ; *People* v. *Wudarski,* 253 Mich. 83 [234 N. W. 157, 95 A. L. R. 782].) Furthermore, the court did not say that the jury "must" or "should" conclude that the statements were not to be believed; but left the ultimate decision with the jury by stating that it had the "right" to so conclude. (*R.* v. *Davis,* 118 L. T. 416; *Weiderman* v. *United States,* 10 Fed. (2d) 745, 746; *Trefone* v. *United States,* 67 Fed. (2d) 954, 955.) The court in commenting on the credibility of the witnesses was not enjoined by the constitu-

tional amendment to confine its remarks to apply generally to all witnesses. The constitutional amendment expressly permits the court to comment on the credibility of *any* witness, which must be assumed to include the defendant when he testifies on his own behalf. The contentions with reference to the trial court's comments on the credibility of other witnesses are likewise disposed of by the foregoing observations.

 There is no merit to the contention that the court, if it venture to comment on the evidence or the testimony of witnesses or of any witness, must sum up all the evidence and the testimony both favorable and unfavorable. There is no such injunction, express or implied, in the language of the Constitution, and none that would compel it under established rules in other jurisdictions. The provision in the Constitution expressly permits the court to "make *such* comment on the evidence and the testimony and credibility of any witness *as in its opinion is necessary for the proper determination of the case*". The court may therefore exercise its own discretion in respect to what comment it will make, so long as it does not withdraw any material evidence from the consideration of the jury (and it does not appear to have done so in the present case), and does not attempt to control the verdict by a direction. (*State* v. *Fuersten,* 103 N. J. L. 383 [135 Atl. 894], and cases hereinabove cited.) It appears to be obvious that the People, by the enactment of the section as recast, desired to permit the jury to look to the court for assistance by receiving from the court such analysis of the evidence and testimony and the credibility of witnesses as the court might deem necessary to prevent injustice by a wrong verdict either for the prosecution or for the defendant, or unnecessary retrial because of the possibility that the jury might fail to reach a verdict one way or the other. The trial court, under the operation of the section, is therefore the best judge of the extent of its comment and should thus be free to exercise the power in accordance with its own discretion as to how the end should best be accomplished, so long as it does not usurp the exclusive function of the jury to decide the facts and the credibility of the witnesses. (*People* v. *De Moss, supra; Vicksburg & M. R. R. Co.* v. *Putnam,* 118 U. S. 545 [7 Sup. Ct. 1, 30 L. Ed. 257] ; *Quercia* v. *United States, supra; Lovejoy* v. *United States,* 128 U. S. 171, 173 [9 Sup. Ct. 57, 32 L. Ed. 389] ; *State* v. *Hauptmann,* 115 N. J. L. 412

[180 Atl. 809], and cases cited; *State* v. *Duffy,* 57 Conn. 525 [18 Atl. 791, 792] ; *State* v. *Wade,* 96 Conn. 238 [113 Atl. 458, 461] ; *State* v. *Journey,* 115 Conn. 344 [161 Atl. 515] ; *Com.* v. *Radzinowicz, supra; R.* v. *O'Connell,* 12 Cr. App. Rep. 219, 221.) The foregoing conclusion and the cases cited indicate that comments argumentative in form are not objectionable (see, also, *State* v. *Dichter,* 95 N. J. L. 203 [112 Atl. 413]), so long as they are not calculated to and do not effect what the court may not do directly, viz., direct a verdict. The so-called "argument" of the court in this case did not partake of the nature of partisan advocacy which was held obnoxious and prejudicial in such cases as *Starr* v. *United States,* 153 U. S. 614 [14 Sup. Ct. 919, 38 L. Ed. 841] ; *Adler* v. *United States,* 182 Fed. 464, and similar cases. There is no merit to the contention that the court stated facts outside of the record.

Expressions of the court's opinion as to the guilt or innocence of the defendant have been held to be within the scope of "comment", so long as the province of the jury as defined by the constitutional section is not invaded. (*Egan* v. *United States,* 22 Fed. (2d) 776, 779 ; *Ching* v. *United States,* 118 Fed. 538, 543 [writ of *certiorari* denied, 189 U. S. 509 (23 Sup. Ct. 849, 47 L. Ed. 923)] ; *State* v. *Giampietro,* 107 N. J. L. 120 [150 Atl. 367, 369] ; *Com.* v. *Nafus,* 303 Pa. 418 [154 Atl. 485] ; *Com.* v. *Edwards,* 318 Pa. 1 [178 Atl. 20] ; *State* v. *Pinagglia,* 99 Conn. 242 [121 Atl. 473] ; *R.* v. *Newman,* 9 Cr. App. Rep. 134, 136 ; see also *Horning* v. *District of Columbia,* 254 U. S. 135, 138 [41 Sup. Ct. 53, 65 L. Ed. 185].) In *United States* v. *Murdock,* 290 U. S. 389, at page 394 [54 Sup. Ct. 223, 78 L. Ed. 381], it was said: "A federal judge may analyze the evidence, comment upon it, and express his views with regard to the testimony of witnesses. He may advise the jury in respect of the facts, but the decision of issues of fact must be fairly left to the jury, *Patton* v. *United States,* 281 U. S. 276, 288 [50 Sup. Ct. 253, 74 L. Ed. 854, 70 A. L. R. 263] ; *Quercia* v. *United States,* 289 U. S. 466 [53 Sup. Ct. 698, 77 L. Ed. 1321]. Although the power of the judge to express an opinion as to the guilt of the defendant exists, it should be exercised cautiously and only in exceptional cases."

The court, not once, but several times during the course of its remarks, reminded the jury of its exclusive func-

tion in respect to the facts and the credibility of the witnesses, and that the opinion of the court was advisory only and not binding upon it and could be disregarded entirely. Although the court's comments might be said to show some lack of care in the preparation thereof, nevertheless viewing the comments as a whole in the light of the evidence and the inferences rationally to be drawn therefrom, we cannot escape the conclusion that the jury did so function as the sole and exclusive judges of the facts, the weight to be accorded the testimony, and the credibility of the witnesses, and that the verdict returned by them was their verdict exclusively. (*R.* v. *Beeby,* 6 Cr. App. Rep. 138, 140, 141.) In such a case further discussion of the subject matter or the views of the courts in other jurisdictions as applied to special classes of comments indulged under the law and the facts there involved, would serve no useful purpose.

The defendant had a full and fair trial, unprejudiced by any error occurring in the course thereof or in the instructions or comments of the court. The contention that the court erred in denying the defendant's motion for a new trial has been examined and likewise found to be lacking in merit.

The judgment and the order are and each is affirmed.

Waste, C. J., Thompson, J., Langdon, J., Seawell, J., Curtis, J., and Conrey, J., concurred.

Rehearing denied.