[Crim. No. 537.   Third Appellate District.—January 26, 1921.]

## THE PEOPLE, Respondent, v. JAM DAD, Appellant.

[1] TRIAL—IRRESPONSIVE ANSWERS—RIGHT OF TRIAL JUDGE TO STRIKE OUT.—A trial judge has a right to confine a witness to the questions propounded to him, and irresponsive answers may be stricken out on his own motion.

[2] ID.—SUFFICIENCY OF EVIDENCE—DUTY OF TRIAL JUDGE TO ADVISE JURY.—A judge should never throw the weight of his judicial position into a case either for or against the defendant, unless satisfied that the evidence is insufficient to justify any conviction, in which case it is his duty so to advise the jury.

[3] CRIMINAL LAW—MURDER—SELF-SERVING STATEMENTS—RES GESTAE. In a prosecution for murder, statements by the defendant that "You see, they started to shoot first" and that "I protect myself," brought out on the cross-examination of a witness as to what the defendant said when he passed out after the shooting, are properly stricken out as self-serving, where it does not appear that they were so closely connected with the shooting as to appear wholly unpremeditated and spontaneous.

[4] ID.—INSTRUCTIONS—MANSLAUGHTER—EVIDENCE.—In a prosecution for murder it is not error to fail to give an instruction upon the subject of manslaughter where the defendant did not request such instruction and there is nothing in the evidence to warrant it, the case being either murder or justifiable homicide.

APPEAL from a judgment of the Superior Court of Sacramento County. Malcolm E. Glenn, Judge. Affirmed.

The facts are stated in the opinion of the court.

Will J. Carragher, F. J. Burke and W. H. Carlin for Appellant.

U. S. Webb, Attorney-General, and J. Chas. Jones, Deputy Attorney-General, for Respondent.

BURNETT, J.—From the judgment following the verdict of conviction of murder in the first degree, with penalty fixed at life imprisonment, and from the order denying his motion for a new trial, defendant brings this appeal. It is not disputed that at the time and place alleged in the indictment defendant shot to death two of his countrymen,

including one Said Achmed, whose murder was charged in
the present proceeding. There can be no doubt that the
evidence is sufficient to support the verdict, and that the
finding of the jury represents a fair and reasonable in-
ference from the facts and circumstances that are disclosed
by the record. Indeed, with commendable frankness counsel
for appellant admit that "the evidence upon the vital points
involved was necessarily conflicting, and there isn't a par-
ticle of use of arguing the question as to whether or not
the verdict is sustained by the evidence." Whether the
evidence "was *necessarily* conflicting," we are not prepared
to say, but we agree with the statement that it was and
is sufficient to sustain the verdict, and since that admission
has been made, we are relieved from the duty or necessity
of reciting the details of the gruesome affair as it was
portrayed by the various witnesses. We proceed, therefore,
immediately to the consideration of the alleged errors
committed by the trial court.

The first of these in the order of their presentation re-
lates to the conduct of the trial judge in questioning cer-
tain witnesses and making certain remarks during the
progress of the trial. The general criticism is made that
he interrogated the witnesses "from the standpoint of the
prosecution," and as to that appellant complains "that
at no time did the learned judge of the court take a
witness from us and carry on a cross-examination or any
examination." However, this may be regarded as a just
compliment to the leading counsel of appellant for the
thoroughness with which he conducted the defense. As
we might suspect from his well-known ability and long
and successful experience at the bar, he seems to have needed
no aid in the examination of the witnesses, and his suffi-
ciency for the task was no doubt recognized by the trial
judge.

The attitude that should be maintained throughout the
trial by the presiding judge does not admit of doubt, and
it has been so frequently the subject of comment by our
appellate courts, that further suggestion is not called for.
In the light of the established principles by which he
should be guided, we cannot say, after a careful examination
of the record, that appellant has any just ground for com-
plaint in consequence of the questions addressed to the

witnesses by the trial judge. We cannot hold that he had any other purpose than to elicit a statement of material facts or that he thereby invaded any right of the defendant or prejudiced him in the eyes of the jury. Special objection is made to the following questions and answers:

"The Court: Well, let me ask you: What he is asking you is whether she went through the door into the kitchen, or just went to the door. A. Your Honor, she's going over there for the door, and I can't say whether she's gone inside or—

"The Court: Well, what did you see her do? A. Well, she's going over there for the door.

"The Court: Well, where was the last point you saw her? A. In door. She's open door.

"Q. You saw her open the door? A. Yes, sir.

"Q. Then, you didn't see her going inside? A. Yes, sir, your Honor, she's going in.

"Q. I am not asking what she is doing; did you see her go in? A. When she's going in, I can't see; she's back there.

"Q. Well, what is the last point you saw her? A. Open door; she's going this way [indicating].

"Q. Did you see her go into the kitchen? A. Yes, sir, I see she's going in kitchen.

"Q. Well, did you see her go into the kitchen? A. Yes, she's walking.

"Q. Where was the last point; did she open the door? A. She opened door, yes, sir; she never come back.

"Q. Well, did you see her go beyond that, yourself? A. Your Honor, when door shut, I can't see.

"Q. Well, she went in and closed the door? A. Yes, sir, that's right, what I think.

"Q. Well, what you saw; you saw her open the door? A. Yes, sir.

"Q. Go into the kitchen? A. Yes, sir.

"Q. And close the door behind her? A. Well, I never notice whether door close or not, but, at same time, the trouble start.

"Q. Well, how much did you see? A. Well, I see she's going in kitchen.

"Q. You saw her go in the kitchen? A. Yes, sir.

"Q. Open the door? A. Yes, sir.

"Q. Well, then, did you see the door slam back of her? A. Well, I can't see. When she's going in, the trouble start.

"Q. Well, how much did you see? A. I see her open door, and she's walking this way, and I can't see anything else. She never stop, though.

"Q. Well, how do you know she didn't stop? A. Well, when she's open the door, she can't stop. When she open door, she's walking in, I think.

"Q. Well, then, I gather from your testimony that she walked down, opened the door, and that is as far as you saw her? A. Yes, sir.

"Q. You never saw her after that? A. No, sir.

"Q. You didn't see her after? A. I didn't see her after; no, sir."

The point to which the questions of the trial judge were addressed was important, since it affected the credibility of Mrs. Mohamed, the leading witness for the people, who had testified that she was in the dining-room while the shooting was going on. It was entirely proper to search the knowledge and recollection of this witness as to the movements of said Mrs. Mohamed and we can see nothing objectionable in the efforts to have the witness state clearly what he saw. We must assume that there was nothing offensive in the manner of the judge and that his attitude was such as to inspire the belief that he simply sought the truth.

[1] While another witness was on the stand and had made certain statements the following occurred:

"The Court: Well, never mind all this.

"A. All right. I go, and I know I am more stronger than R. Dad—

"The Court: Well, cut that out.

"A. And I go up to him and get knife from him—

"The Court: Strike that out. You had better ask him some questions."

The trial judge was apparently trying to confine the witness to the questions propounded to him. This he had a right to do, nor was he required to await the motion of the district attorney to have the irresponsive answers stricken out. It must be remembered that the counsel are officers of the court to assist the trial judge in conducting

the proceedings regularly and expeditiously, but the responsibility of so conducting the trial rests ultimately upon the judge. There was nothing herein objectionable, unless possibly in the use of the expression ''Cut that out.'' That, however, involved a question of taste rather than of error. Indeed, the expression is so common that it might be regarded as in accordance with reputable usage. At any rate, it could have been understood to mean nothing else than ''strike that out.''

The leading counsel for appellant has apparently some excuse for a personal grievance that he was unjustifiably rebuked by the trial judge. He had asked a question of one of the witnesses to which an objection had been sustained, then the following appears: ''Mr. Carlin: Well— The Court: Mr. Carlin, please don't make any remarks afterward. Let the court's ruling stand. Of course, you are an old practitioner, and it is second nature, perhaps. However, please leave out the after-remarks.'' The record does not justify said statement of the court, but, of course, it could not have prejudiced the defendant in the mind of any fair juror. The trial judge probably misunderstood counsel, but, at any rate, a judgment should not be reversed for such a comparatively trifling circumstance.

[2] It cannot be too earnestly asserted that a judge ''should never throw the weight of his judicial position into a case either for or against the defendant, unless satisfied that the evidence is insufficient to justify any conviction, in which case it is his duty so to advise the jury'' (*People* v. *Conboy,* 15 Cal. App. 97, [115 Pac. 703]), but it cannot be said that herein was there any violation of this just and wholesome rule.

Appellant in his cross-examination of Mrs. Mohamed asked this question: ''What were they doing when they were not sitting at the table?'' This referred to the movements of said Achmed and Gool after they had come into the restaurant. An objection to the question was overruled and the witness answered: ''Why, first they came in, they goes into the kitchen. They were talking to my husband.'' A motion was made to strike out the answer on the ground it was not responsive and not cross-examination, which was granted. Appellant claims that he had the right to go fully into the conduct of these two men to show

that they were lying in wait for the defendant. But, conceding that the answer may have had such tendency, it is sufficient to say that it was fully covered by other answers of the witness which were not stricken out. It may be added that the witness testified that she saw no weapon in the hands of either of said men and that the conversation she heard between them and her husband was in the Afghan language, which she did not understand. In connection with this it may be said that the husband testified that said conversation was in relation to the weather and to the fact that the men desired to warm themselves by the kitchen fire.

[3] The witness, Mrs. Mohamed, on cross-examination was asked this question: "What did he [defendant] say when he passed out?" and she answered: "Well, he just told me about the shooting; he says, 'You see, they started to shoot first'; so he says, 'I protect myself.'" On motion of the district attorney this answer was stricken out "as self-serving." It is claimed by appellant that it was a part of the *res gestae* and was therefore proper evidence. The rule is familiar and permits the declarations of the defendant to be shown where they are so closely connected with the main event as to appear wholly unpremeditated and spontaneous. Manifestly, it is often difficult to determine whether the situation meets the requirement of the rule. But a reading of the previous testimony of the witness shows that some little time must have elapsed after the killing and we think it cannot be said that the ruling was erroneous. It may be true that "the smoke of the battle was still in the restaurant," but the defendant had ample time to contemplate a possible defense.

The proprietor of the restaurant on cross-examination was asked this question: "You and Said Achmed and John Gool belonged to the same crowd, to the same people, or used to take up money together, didn't you?" An objection to the form of the question was sustained. It is quite apparent that the ruling was correct. The question involved several different matters, and it may be added that in response to other questions the witness fully covered the ground embraced in said interrogatory. So that the ruling, if erroneous, was manifestly without prejudice.

One Pedro Lara, a witness for the people, claimed to have been at the lunch counter in said restaurant at the time of the shooting. He testified that he was about to drink a cup of coffee and was in the act of stirring it when the first shot was fired. On the ground that it was immaterial, an objection was sustained to this question: "How long did that continue while the shooting was going on?" The court might well have permitted the answer, but appellant frankly admits that it is "a small matter." We are satisfied that it is too small to justify serious consideration. We may add that the witness had substantially answered the question by stating that it continued during the entire period of the firing of the shots.

Appellant calls attention to the fact that he testified that deceased Gool on a prior occasion had violently assaulted him and taken from his person a large sum of money. He claims—and justly so—that this was admissible as a circumstance tending to justify a belief that his life was in danger at the time of the said homicide. However, he complains that on cross-examination his objection was overruled to the following question: "By the way, Mr. Gool never was convicted on a charge of robbing you, or attempting to rob you?" The witness could not be impeached by the failure of a jury to convict his supposed assailant and the question was improper. But it was without prejudice, as a witness for the defendant testified without objection that there was a mistrial of the charge and it fully appears otherwise in the record that the parties were present in Sacramento to attend the second trial of the case to begin the next day.

One of the witnesses for the defendant was interrogated by the prosecution as to the number of times he had visited the office of one of the counsel for the defense. The inquiry might well have been omitted, but the defendant could not have been prejudiced by the question and answer.

Fault is found with the conduct of the special counsel for the people while delivering the closing argument to the jury in referring to the fact that Mr. Carlin had assisted the district attorney of Yuba County in the prosecution of a certain criminal charge against one Wilson. This was said apparently in response to a criticism of Mr. Howe for appearing in the prosecution of this case. The

argument at best might be characterized as *ad captandum vulgus.* Neither attorney was to be censured for his said appearance, as we must assume that he believed his cause to be just. It should not have been made the subject of animadversion, but no intelligent person would be misled by such reference to a not unusual practice. In fact, appellant admits that it probably did him no particular harm. We think it should be said that it is quite improbable that it resulted in his injury.

[4] As to the instructions, appellant complains that the court failed to give one upon the subject of manslaughter. But appellant did not request such instruction, and, besides, there was nothing in the evidence to warrant it. The case was either murder or justifiable homicide. An instruction as to manslaughter could have afforded only a pretense for a compromise verdict.

In reference to the instructions requested by the defendant and refused by the court we have carefully examined the record and find that they were fully covered by the fair and comprehensive instructions which were given.

We find no error in the record to justify an interference with the verdict, and the judgment and order are therefore affirmed.

Prewett, P. J., *pro tem.,* and Hart, J., concurred.