[Crim. No. 1918.   First Appellate District, Division Two.—October 16, 1936.]

THE PEOPLE, Respondent, v. LOUIS WILLIAMS, Appellant.

Charles Reagh for Appellant.

U. S. Webb, Attorney-General, and Seibert L. Sefton, Deputy Attorney-General, for Respondent.

STURTEVANT, J.—The defendant and two others, George Woodbur and Lester Leuty, were charged in an information filed by the district attorney with having committed robbery. All of the defendants pleaded not guilty. The trial commenced on June 25, 1936. Before that date the defendants George Woodbur and Lester Leuty withdrew their pleas of not guilty and entered a plea of guilty. The defendant Louis Williams only went to trial. The jury returned a verdict of guilty as charged in the information and determined the degree to be first degree. The defendant made a motion for a new trial and a motion in arrest of judgment. Both motions were denied. He was sentenced to state prison and thereupon he appealed from the order denying his motion for a new trial, from the order denying his motion in arrest of judgment, and from the final judgment.

He claims he did not have a fair trial and specifies the particulars.

On March 17, 1936, Dr. Lew E. Wallace, a dentist, was held up by two young men while he was walking near his home on Monterey Boulevard in San Francisco. The act occurred at about 9:30 P. M. The hold-up occurred in the middle of the block where the two men stepped out from behind some shrubbery. One man held a gun and told him to get into the shrubbery, which he did, and there he was searched and robbed by the two men. One of them admonished the doctor to keep quiet or he would bat the doctor in the jaw. While the hold-up was taking place a third man in an automobile which was parked near by also kept the doctor covered with a gun. From the doctor was taken a gold watch, a gold chain, a gold knife, an elk's tooth, a wallet containing currency, a card case containing lodge receipts, a Knight Templar badge, a pen flash light, a fountain pen, a gold pencil, and about $25 or $30.

After taking these things from the doctor the men told him to get along, whereupon he proceeded to his home. At the trial the doctor testified that a gun shown to him resembled the gun that had been used by one of the men who held him up, and that another gun shown to him resembled the gun used by the man in the automobile. He also identified a watch shown to him as his watch; also a chain, a Knight Templar badge, a pen knife, a gold pencil, and a pen flash light. The chain was given to him immediately prior to holding the preliminary hearing. It was given to him by Mr. Reagh. The doctor also testified that a picture of a Chevrolet car shown to him represented a car that was similar to the one at the scene of the hold-up. He further testified that he could not identify the person who remained in the automobile and held a gun on him but he did identify the two men who stood on the ground and held him up as being Leuty and Woodbur. Dr. Wallace's nephew identified the pen flash light as resembling one he had given to his uncle. Robert Thompson, a former employer of the defendant, identified the gun which Dr. Wallace had testified resembled the one held by the man in the automobile as being a gun which he had sold to the defendant about the middle of February, 1936. Corporal Meyer testified he was in a pawn shop when George Woodbur, one of the codefendants, tried to pawn a Knight Templar badge and a gold pen knife. He identified both of those articles when shown to him in the courtroom. On the same day that George Woodbur attempted to pawn said articles the corporal arrested this defendant and took from his possession a small pen flash light. At that time the defendant stated he had bought the flash light at the Levin store at Oak and Van Ness Avenue for twenty cents. After arresting the defendant he was taken to the police station and was accused of using the Chevrolet car in the robbery, but the defendant denied using it. He stated it was possible somebody could have driven the car and when asked the name of such person he gave the name of a dead man. Mr. Gray, the sales manager of Levin's store, testified his store never carried such an article as the pen flash light. Inspector Hanson testified that on going to Leuty's home he found both guns and the ·watch. Lester Leuty, one of the codefendants, took the stand and related how he and

Woodbur identified the guns in evidence and testified how the robbery was committed. He also testified how the loot was divided and that the defendant received the pen flash light and the watch chain. He further testified the gold pencil and Knight Templar badge were given to Woodbur. Dr. Wallace testified that Mr. Reagh returned the chain to him at the preliminary examination. As we understand the record the preliminary examination of all three defendants was set for the same hour. Mr. Reagh appeared at that time as the attorney for Woodbur and Leuty and waived a preliminary examination in their behalf. Later he appeared as attorney for Williams *ex gratia* and conducted the examination. Shortly before the examination commenced he handed to Dr. Wallace the chain. In this connection it should be added that Leuty testified Williams had told him the doctor specially wanted his chain back so Williams had given it to a girl friend of his to take to Mr. Reagh to be given to Dr. Wallace. Mr. Reagh testified the chain was brought to his office by a man who left it there. No questions were asked and he did not know the man's name.

The defendant complains because the trial court propounded many questions to the several witnesses. The record shows it did so for the purposes of the record. It is not claimed that any single question was objectionable. A careful inspection of the record disclosed no error as to any question propounded by the court.

It is also claimed the trial court sustained objections to questions asked by the defense when the prosecution had not interposed an objection. Such fact standing alone was not error but it was quite the proper practice. (Code Civ. Proc., sec. 2066; 27 Cal. Jur. 62; *People* v. *Bartley,* 12 Cal. App. 773, 777 [108 Pac. 868]; *People* v. *Dad,* 51 Cal. App. 182, 185 [196 Pac. 506]; *People* v. *Tomasovich,* 56 Cal. App. 520, 528 [206 Pac. 119].) Otherwise the defendant does not claim any single one of the objections was erroneously sustained.

Finally it is asserted that the trial court "asked more questions than either counsel". In the first place, the statement is a decided misrepresentation of the record. In the second place, under all of the circumstances surrounding the trial, we fail to see how the trial court could have

done its duty if it had not asked every question which it propounded.

As stated above, Lester Leuty testified for the prosecution. ▇▇ Manifestly he was an accomplice. For corroboration the prosecution relied to a great extent on the stolen articles produced by it, identified by the witnesses, and offered in evidence. In so far as we have noticed no single witness testified positively in giving testimony of and regarding the identification of any single article. The tesimony was to the effect that a certain article was like or that it resembled the one seen at the hold-up. The defendant now contends that the identification was not so complete as to constitute corroboration. Under all of the circumstances we think the identification of each article was sufficient and that the trial court did not err in submitting the case on that theory.

▇▇ The trial court gave the jury an instruction that it could consider the testimony regarding "the chain" as corroboration. The defendant claims it was prejudicial error because it assumed as a fact that Mr. Reagh was the attorney for this defendant at the moment he delivered the chain to Dr. Wallace. The instruction was not so worded. The uncontradicted evidence was that Mr. Reagh, a few moments after the said delivery, commenced to act as the defendant's attorney and is still so acting. The instruction contained no word at variance with such facts. Moreover, all of the instructions are to be considered together. In many different places the trial court instructed the jury that all questions of fact were for the determination of the jury and not for the determination of the court and that the court was not expressing any opinion thereon.

▇▇ In other instructions the trial court referred to Leuty as "the accomplice". The defendant asserts that was assuming a fact. It was, but properly so. The uncontradicted evidence showed Leuty to be an accomplice. No word in the instruction was to the effect that he was the accomplice of this defendant. That question was left for the determination of the jury.

We find no error in the record. The judgment and orders appealed from are affirmed.

Nourse, P. J., and Spence, J., concurred.