[Crim. No. 2832.   First Dist., Div. Two.   Apr. 6, 1953.]

THE PEOPLE, Respondent, v. JAMES R. DEACON, Appellant.

Albert E. Polonsky for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, and Charles E. McClung, Deputy Attorney General, for Respondent.

DOOLING, J.—Appeal from a judgment of conviction of second degree murder and from the order denying a motion for new trial. The principal complaint is the alleged misconduct of both the trial judge and the prosecutor. Also cited are an instruction on first degree murder and the admission of certain evidence.

Dana Clark died of knife wounds on August 12, 1951, in appellant's San Francisco apartment. Deacon and Clark had been friends for a number of years. Clark was an excessive drinker. They were together on the day in question and, with three other people, had some drinks in a bar. About 9:45 p.m. on the night in question Deacon went to one Vaughn's apartment, which was in the same building as his own, to get some ice. The ice was for Clark who had been beaten by Deacon in Deacon's apartment. Deacon said he had "blown his top." Vaughn went back to his own apartment and Clark remained in Deacon's. At about 11:50 p.m. Vaughn saw Deacon again when Deacon rang Vaughn's doorbell and said "Call an ambulance" and "Dana is dying" and "I think I have killed Dana." Vaughn then went to Deacon's apartment and found Clark dead, lying on his back on the bed with a wound near his heart. Vaughn identified a knife that he had used in cracking the ice earlier in the evening and said he had left it on the sink where he had used it. Deacon never told Vaughn that Clark had killed himself. Clark had expressed a sullen wish to kill himself after he had been beaten. Vaughn did not see any knife when he went into Deacon's apartment after Clark had been stabbed. The knife was found in the kitchen and was clean. The autopsy showed that, although there was only one surface wound, there were three internal wounds indicating that the knife was

thrust three times through the same opening. It was the expert's opinion that it was "very unlikely" that the wounds were self inflicted. Deacon testified that Clark was drunk and despondent and that finally he, Deacon, threw the knife to Clark and told him to use it or stop talking about it. Deacon further testified that Clark did use it himself, which Deacon saw and Deacon then grabbed the knife, withdrew it and threw it into the kitchen. He had felt he was morally responsible for the death, but he did not kill Clark. The cause of the previous beating given Clark by Deacon does not appear other than he "blew his top," nor is there further motive shown for a killing. The evidence however is very convincing of a killing rather than a suicide especially in light of the expert's testimony and Deacon's admission to Vaughn, immediately after Clark's death: "I think I have killed Dana."

There were no objections made to the cited conduct which is characterized as misconduct. Appellant would make use of an exception to the usual rule, that in cases where the objection would be fruitless it is not necessary. But, appellant also points out that no particular acts or statements by the judge or prosecutor may be harmful in themselves. What he complains of is the sum of the particular incidents. The exception mentioned above applies to those situations where the conduct is so flagrantly obnoxious that a verbal objection or admonition would not erase it from the minds of the jurors. In *People* v. *Mahoney,* 201 Cal. 618 [258 P. 607], it was pointed out that any admonition would have been disregarded by the jury in a case where the remarks of the judge were particularly distasteful. The problem really is whether a judicious admonition would have cured any prejudicial effect conveyed to the jury. (*People* v. *Weeks,* 104 Cal.App. 708 [286 P. 514].) Appellant likens his case to *People* v. *Burns,* 109 Cal.App.2d 524 [241 P.2d 308]. But in that case there were a number of errors of law as well as improper remarks made in a close case.

The first assignment of error is directed to the court's volunteering an objection that a question by defense counsel assumed something not in evidence. It hardly seems prejudicial, but rather quite proper. Next are listed a series of citations which are hardly necessary of quotation. All they amount to is interruption by the court in cases of nonresponsive answers, immaterial questions and poorly taken objections. The interruptions appear entirely proper and indicate no prejudice whatsoever. The next citation is the court's

volunteered objection to testimony of a witness about something he had not directly witnessed. The entire colloquy is nothing more than an argument over different interpretations of the evidence. The court would not let certain evidence in because it was hearsay. It further told defense counsel that night sessions would be held if the trial did not get along. This does not appear prejudicial either. Further, the court interrupted defense counsel's opening statement on its own motion to point out that what was being said would not be material to the case. These appear to be proper remarks in the interest of confining the case to its issues. There certainly could be no prejudice from them. ▋ A judge may properly exclude inadmissible testimony even though no objection is made. (*People* v. *Yuen,* 32 Cal.App.2d 151, 160 [89 P.2d 438]; *People* v. *Parry,* 105 Cal.App.2d 319, 322 [232 P.2d 899].)

In two instances the court sought by itself to elicit testimony from defendant concerning what liquor was bought and drunk by him and decedent. The questions were all proper, material and directly in point. Appellant complains that the court should not have taken it upon itself to ask these questions. ▋ It is not argued that the questions were aimed at discrediting appellant, and the trial court may properly ask questions as long as they do not cast aspersion or ridicule or indicate the judge's convictions. This is especially so where no objection is made. (*People* v. *Ottey,* 5 Cal.2d 714, 720-721 [56 P.2d 193]; *People* v. *Carlson,* 73 Cal.App.2d 933, 942 [167 P.2d 812]; *People* v. *Williams,* 17 Cal.App.2d 122, 125 [61 P.2d 813].)

The next point is alleged misconduct of the prosecutor. The principal citation concerns a rather lightly taken colloquy amongst counsel and judge concerning water and alcohol. A reading of it would suggest that defense counsel brought on the levity himself. At any rate it is at most facetious and not harmful. There is no hint at harm in a statement by the prosecutor that the defense counsel might like a drink of water. The question by the prosecutor of whether defense counsel was speaking of the case at trial or not was trivial and shows no harm. At one point the prosecutor hinted that Clark was at defendant's mercy. This may have been improper but not prejudicial. This case is not at all like *People* v. *Duvernay,* 43 Cal.App.2d 823 [111 P.2d 659], where the prosecution had asked extremely improper questions concerning defendant's former arrests and his characteristics as a

narcotic user where he was not charged with use but with selling. Besides, the statement was not objected to.

The next assignment of error refers to the court's instructions to the jury on first degree murder and the penalty therefor. But the court also instructed the jury that "Although there are two degrees of murder, the evidence in this case is such that either the defendant is innocent of the charge of murder or he is guilty of murder in the second degree." Hence the first degree instructions became immaterial. Respondent contends that the first degree instructions tended to clarify to the jurors what second degree murder was.

Second degree murder is all murder which is not first degree murder. If it was surplusage (and admittedly the instruction on the penalty for first degree murder is such) it cannot be complained of as prejudicial, for appellant was, after all, convicted of second degree murder, not first.

The next assignment of error concerns the allowing a witness to testify to the spirit or tenor of voices that he heard in the room directly above his own. He stated that the voices denoted "anger." It was allowed under the exception to the opinion rule that laymen can give their opinion on matters of common knowledge that are not susceptible of analysis and detailed description. Anger, like speed or sobriety, must be described as a conclusion. (*Holland* v. *Zollner*, 102 Cal. 633, 638-639 [36 P. 930, 37 P. 231] ; 20 Am. Jur., Evidence, § 823, p. 692; 32 C.J.S., Evidence, § 490, pp. 148-149, § 510b, p. 188.) How "anger" could be evidenced other than by characterizing it as such is difficult to see. Anger is the fact, not the voices that evidence the anger. Every attempt at analyzing the voices heard would reproduce the same objection here made, if it were a good one.

The next error claimed occurred where the witness was asked for a conclusion, a general objection by the prosecutor was made and the court thereupon sustained the objection on the specific ground that the question called for the conclusion of the witness. Appellant conceives that this was error since only a general objection was made. But what he refers to is a rule applied by an appellate court in cases where the objection is overruled. Appellant cannot make a specific objection for the first time on appeal. At the trial the court may rule out improper evidence on its own motion and appellant does not argue that the evidence was admissible.

The last cited error consisted of allowing the prosecutor to ask an argumentative question of appellant. The

question was: "Mr. Deacon, isn't it a fact that at this time, when they were at your apartment that morning you hadn't had an opportunity to get together the story that you have now told from the witness stand in this trial?" The witness gave a negative answer before the objection was made and overruled. No doubt the question is argumentative, but it was made on cross-examination and hardly is prejudicial especially since a negative answer was given.

A reading of the record satisfies us that the case was fairly tried and that no prejudicial error of any kind occurred.

Judgment and order affirmed.

Nourse, P. J., and Goodell, J., concurred.