[Crim. No. 1245.    Fourth Dist.    Oct. 17, 1958.]

THE PEOPLE, Respondent, v. LEROY LOPEZ, Appellant.

Betty Lou Lamoreaux, under appointment by the District Court of Appeal, for Appellant.

Edmund G. Brown, Attorney General, and Jack E. Goertzen, Deputy Attorney General, for Respondent.

GRIFFIN, P. J.—Defendant-appellant was convicted by a jury of unlawful sale of narcotics. (Violation of Health & Saf. Code, § 11500.)  He admitted a prior conviction of a felony

(possession of narcotics.) A reversal is sought on the claimed ground of prejudicial misconduct of the trial judge.

According to the testimony of one O. C. Reed, special employee of the Narcotics Bureau, on February 20, 1958, he and one Ann Massey, a woman who had been previously convicted of selling narcotics on different occasions, saw defendant near the International Pool Hall and Bar, in Fresno. Defendant spoke to Ann and continued on into the bar. Later, he came back to her and she told him Reed would like to buy some narcotics. Defendant said he would go and obtain some but he would have to have the money ($5.00) for a single capsule. Reed counted out five one-dollar bills. Defendant placed them in his pocket and told her he would return in a little while. Several narcotic agents were stationed in a Japanese hotel room near-by and they testified they saw the money pass to defendant and that Reed gave a known signal, by tipping his hat to the other officers, that defendant was going to obtain narcotics for him. Defendant drove away in a car with a known user. Reed began talking to Ann. About 30 minutes later defendant returned and went into the bar and Reed followed. Defendant told Reed to remain there because he wanted to talk with Ann, alone. He walked out to Ann and had a conversation with her. Ann and defendant walked toward an alley and Reed followed them. He saw defendant pass something to Ann and then defendant disappeared. Ann returned to Reed and gave him a capsule and said: "This is the stuff." She said defendant was afraid of Reed. Reed took the capsule containing a powdery substance to his hotel and it was subsequently analyzed and found to contain opium. The other officers corroborated Reed's testimony insofar as they could see from the hotel window and saw the money pass to defendant.

Defendant failed to testify at the trial but produced Ann as his witness. She had been sentenced to prison on several sales of narcotics and apparently had previously applied for probation and had made a statement to the probation officer in reference to her activities in this traffic which the trial court in this action had previously read and considered. Her story on the witness stand was generally that she and Reed were talking near the International Pool Hall about 5 p.m. on the day in question; that she met defendant walking down the street, stopped him, and inquired if he would give her a ride to her mother's home; that Reed handed defendant $5.00; that he took it and asked her what it was for; that she told de-

fendant that Reed had made a mistake, that the $5.00 was meant for her, and that defendant then gave it to her; that the purpose of the transaction was for the purchase of narcotics because she had agreed to furnish Reed with it; that after defendant returned the money to her he left and later came back to see if she was ready to take the ride; that she walked across the bridge, picked up a capsule she had hidden away underneath the fence, took it back and gave it to Reed; that she and Reed went to a hotel and divided the capsule; that Reed just "sniffed a little from his finger and said he was going up to his room and use it; that she made the sale to Reed without any help from defendant; and that this transaction was the reason she was in prison. She was sentenced on more than one count for the sale of narcotics.

Counsel for defendant rested his case. A recess was taken and thereafter the trial judge asked the witness to resume the stand. She did so and the judge inquired: "Now, Ann, you remember that you made a report to me through the probation office in respect to these transactions? THE WITNESS: Yes. THE COURT: Did you tell me any of the things in that report that you have told here? (Pause.) You are not afraid of me, are you? THE WITNESS: No. THE COURT: Have I ever said anything unkindly to you? THE WITNESS: No. THE COURT: All right. You remember you made that report through the probation officer? You didn't tell me any of these things in that report, did you? THE WITNESS: No. THE COURT: That is all." The prosecution called Mr. Reed in rebuttal, who denied Ann's story in reference to "sniffing" the narcotic or using it in any form. The People rested their case and arguments to the jury followed the next morning. Before the jury returned with a verdict against defendant his counsel moved for a mistrial on the ground that the court committed prejudicial error in relation to the examination of the witness as above related. The motion was denied. The same question was again considered by the trial judge on a motion for new trial which was denied.

The claim is that the judge's questioning indicated to the jury his belief that the witness was not telling the truth; that the witness had made a prior inconsistent statement, and the court endeavored to impeach the witness's testimony without producing or showing the claimed prior inconsistent statement to her for examination and explanation; that this form and method of impeachment is not authorized and that the error was not cured by subsequent instructions, citing Section

2052 of the Code of Civil Procedure; *People* v. *Giacomino*, 347 Ill. 523 [180 N.E. 437, 84 A.L.R. 1168] ; note, 84 A.L.R. 1172, 1178; *People* v. *Zammora*, 66 Cal.App.2d 166, 210 [152 P.2d 180] ; and 3 Cal.Jur.2d 648, section 162.

A close examination of the questions propounded do not show that the trial judge indicated the witness had made a contrary or inconsistent statement to that made on the witness stand. The examination only went to the question as to whether the witness stated in a prior report all the facts here related without indicating that they were inconsistent. She stated she did not. The question did not call for the production of the report. There was no objection by counsel for defendant to the form of the question. No motion was made to strike the answer and no request was made that the jury be instructed to disregard the questions and answers. There was a general instruction given to the effect that if any expression of the trial judge seemed to indicate an opinion as to which witnesses were worthy of belief, the jury was instructed to disregard it and that this was a matter solely for the jurors to determine. ■ It is a well-established principle of law that a trial judge may make reasonable examination of witnesses in the course of a trial. (*People* v. *Ottey,* 5 Cal.2d 714, 721 [56 P.2d 193] ; *People* v. *Deacon,* 117 Cal. App.2d 206, 209 [255 P.2d 98] ; *People* v. *Corrigan,* 48 Cal.2d 551, 555 [310 P.2d 953].) The importance in achieving truth in placing guilt on deserving shoulders is equal to the importance of achieving truth to exonerate the innocent. ■ We are convinced that the questions, as propounded, and the answers given, did not constitute prejudicial error sufficient to warrant a reversal, nor that it would be reasonably probable that a different result would have been reached had the report been produced. (*People* v. *Watson,* 46 Cal.2d 818 [299 P.2d 243] ; *People* v. *Hume,* 56 Cal.App.2d 262, 266 [132 P.2d 52] ; *People* v. *Corrigan,* 48 Cal.2d 551, 556 [310 P.2d 953] ; *People* v. *Deacon,* 117 Cal.App.2d 206, 208 [255 P.2d 98].)

Judgment and order denying a new trial affirmed.

Mussell, J., and Coughlin, J. pro tem.,* concurred.

---

*Assigned by Chairman of Judicial Council.