[Crim. No. 7680. Second Dist., Div. One. Mar. 1, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. EARL CHESTER JONES, Defendant and Appellant.

Ellery E. Cuff, Public Defender, Richard W. Erskine and James L. McCormick, Deputy Public Defenders, for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Norman G. Taylor, Deputy Attorney General, for Plaintiff and Respondent.

FOURT, J.—This is an appeal from a judgment of conviction of a violation of section 11503 of the Health and Safety Code (delivering of material in lieu of narcotics).

In an indictment filed on November 2, 1960, the defendant was charged with having agreed to offer unlawfully to sell heroin to a Billie Hariston and then selling to said Hariston a substance in lieu of said narcotic on October 18, 1960. In a trial before a jury the defendant was found guilty as charged. Probation and a motion for a new trial were denied. It was established by testimony and other evidence that the defendant, on or about August 18, 1960, sold to an undercover police officer of the Narcotics Division what was represented to be heroin. An examination of the product purchased disclosed that it was not heroin. The defendant's defense in effect was that he was acting under the direction, control and supervision of the police officer to whom he sold the item and therefore was immune from prosecution.

The defendant was arrested at the county jail on January 24, 1961, where he was serving a term for another narcotics offense, having commenced the serving of such term in August 1960.

The defendant admittedly was a drug addict at the time of the sale of the product in question.

It is now asserted that there were factors in the trial which resulted in the defendant's defense being prejudiced, in that there were interruptions and comments by the trial judge during defendant's testimony, that the defendant was prejudiced by the argument of the deputy district attorney to the effect that a recorded statement of the defendant was unreliable because it was made long after the defendant had been in custody, and further that an instruction of the trial judge was erroneous. It is also argued that the evidence could be interpreted as showing that the appellant was led to believe that he was working with the police on the transaction in question and thus it was error for the court to refuse an instruction upon that theory.

During the examination of defendant by his own counsel he was asked in effect how many buys of heroin he had assisted in making for the police in March 1958 and the judge said:

"Counsel, aren't those things going a little far afield, the details of that matter?"

Counsel then, out of hearing of the jury, sought to convince the judge that the testimony should be admitted and out of the hearing of the jury the judge said:

"THE COURT: He is not charged with doing anything back in '57 or '58, he is charged right now; so you may bring out the fact that he did act as under cover [sic] agent and made buys. I don't think it is necessary to detail transactions. It just seems to me just a question of getting sympathy, the fact he has worked with the police department, and therefore in exchange for that he ought to get off.

". . . . . . . . . . . .

"THE COURT: I don't think the details are necessary.

". . . . . . . . . . . .

"THE COURT: You can indicate the period of time he was engaged in that type of operation. If there is a break over to another period of time, but I don't think it is necessary for us to take up time in this trial to detail every single transaction that took place."

Counsel assured the court that he had no intention of doing so. Again a few minutes later and out of the hearing of the jury counsel offered to the court that the defendant would testify that he was told by the police to leave Los Angeles and stay out of the city for a year or more. The judge answered, out of the hearing of the jury:

"THE COURT: Mr. Erskine, I want to understand here, we don't have the police department on trial here.

"MR. ERSKINE: No, sir, I'm not stating that, but the problem is that he worked in 1957; he did not work for a year while he was away.

"THE COURT: Very well, you may state that, but we are not going into details of these conversations.

". . . . . . . . . . . .

"THE COURT: The reason why he didn't work is immaterial. We're not trying the police department here.

"MR. ERSKINE: I don't intend to try the police department.

"THE COURT: It certainly looks that way to me, Mr. Erskine.

". . . . . . . . . . . .

"THE COURT: You may state that after a conversation with the police department he left the state and stayed out of the

state for a certain period of time. We're not going into the details of the conversation.''

The defendant apparently left Los Angeles on the occasion mentioned to go to a federal narcotic hospital in Fort Worth, Texas, for treatment as an addict. He stayed in that hospital approximately 14 days.

Shortly following the talk between counsel and the judge at the bench counsel sought to show something by the defendant with reference to some stolen property after the defendant's return from Texas. The following then occurred in the questioning of defendant:

''Q. Just generally what was the subject matter of your work with him, sir?

''A. It was in connection with receiver of stolen property.

''Q. And when approximately was it that you worked with him [police officer] in that connection, sir?

''THE COURT: Counsel, this is a new matter here, I don't think it is material here, different type of offense, and so forth.

''MR. ERSKINE: Just want to establish the date, if I may, your Honor. I believe that it is material——

''THE COURT: Let's affirmatively establish the dates he cooperated on narcotics, and not go rambling all over on every other thing.

''MR. ERSKINE: Am I permitted to pursue this particular——

''THE COURT: You may. Let's get down to what you want to prove and keep it on that line, instead of taking it way off on other matters; we are not concerned with transactions outside of narcotics in this trial.

''MR. ERSKINE: I think the subject matter of association with police is quite relevant to the matter, your Honor.

''THE COURT: Overruled. Confine it to narcotics matters.

''MR. ERSKINE: May I ask him the date of this last transaction, your Honor?

''THE COURT: You may.''

The defendant was then questioned.

''Q. BY MR. ERSKINE: What, approximately, was the date or dates of the last transaction indicated about receiving stolen property?

''A. In June of 1960.''

There was nothing stated by the judge which was discourteous or disparaging of the defendant or of his coun-

810

sel. The court did not put his weight and prestige of his office to the support of the prosecution.

■ It was the duty of the trial judge to see to it that the trial proceeded in an orderly fashion and that extraneous matters were not injected into the case which might well confuse the jury. (*People* v. *Deacon,* 117 Cal.App.2d 206, 208 [255 P.2d 98] ; *People* v. *Yuen,* 32 Cal.App.2d 151, 160 [89 P.2d 438, 90 P.2d 291].)

■ Counsel in short sought without a prior showing of relevancy to inject into the case transactions which the defendant had had with the police some two years before the commission of the offense in question. When counsel properly laid the required foundation for whatever it was he wanted to prove he was able to get into evidence that which was proper.

The bulk of the remarks complained of were made out of the hearing of the jury by the judge concerning offers of proof and objections to it. The court was entirely within its province and jurisdiction in proceeding as it did. (*People* v. *Savage,* 66 Cal.App.2d 237, 242-243 [152 P.2d 240].)

■ The judge can make objections to the introduction of evidence even though none be made by the prosecution. (*People* v. *Deacon,* 117 Cal.App.2d 206, 209 [255 P.2d 98] ; *People* v. *Williams,* 17 Cal.App.2d 122, 125 [61 P.2d 813].)

■ In any event substantially all of the testimony which the defendant desired into evidence was introduced and received. There was no prejudice in the conduct of the judge. (*People* v. *Ottey,* 5 Cal.2d 714, 721 [56 P.2d 193] ; *People* v. *Carlson,* 73 Cal.App.2d 933, 942 [167 P.2d 812].)

■ There is no merit to the contention that the prosecutor's argument to the jury was prejudicial. A district attorney has a duty to perform. ■ It has been stated that:

" 'It is the province of a district attorney to state to a jury the various conclusions that he draws from the evidence, and to make it clear to the jury what conclusions in his opinion should be drawn from the evidence introduced, so long as he keeps within the scope of conclusions which may properly be drawn.' [Citing case.] ■ 'The right of counsel to discuss the merits of a case, both as to the law and facts, is very wide, and he has the right to state fully his views as to what the evidence shows, and as to the conclusions to be fairly drawn therefrom. The adverse party cannot complain if the reasoning be faulty and the deductions illogical,

as such matters are ultimately for the consideration of the jury.' [Citing case.] In the argument before the jury, any reasonable inference may be drawn from the evidence, and it is a matter within the discretion of the trial court to determine whether counsel stays within the permissible range of discussion.'' (*People* v. *Simpson,* 43 Cal.2d 553, 569-570 [275 P.2d 31]; *People* v. *Eggers,* 30 Cal.2d 676, 693 [185 P.2d 1].)

 There was no objection to the now complained of statements of the deputy district attorney at the time they were made. (See *People* v. *Hoyt,* 20 Cal.2d 306, 318 [125 P.2d 29].)

In any event it is perfectly clear that the defendant was in fact in jail for two and one-half months before a recording of his talk with the police was made and it would seem to be a fair inference under the circumstances (as argued by the prosecution) that the defendant while in jail could have formulated his story about being employed by the police on the occasion in question.

 Appellant further contends that the court erred in the giving of the following instruction:

''The law of this state admonishes you to view with caution the testimony of any witness which purports to relate an oral admission of the defendant.''

It is asserted that the instruction constituted error because it in effect told the jury not to believe the tape recording of the defendant's statement to the police.

 An admission has been defined as ''. . . a statement or conduct of a *party to the action* . . . which is offered against him at trial.'' (Witkin, California Evidence, § 220, pp. 246-247.) It is admissible against a party under an exception to the hearsay rule. (*Bonebrake* v. *McCormick,* 35 Cal.2d 16, 18-19 [215 P.2d 728]; Code Civ. Proc., § 1870, subd. 2; 4 Wigmore, Evidence (3d ed. 1940) § 1048, pp. 2-3.)

 The tape recording in this case was offered by the defendant and not by the prosecutor. It was not offered against the party but rather and to the contrary it was offered by and for the party defendant.

It was a self-serving declaration and under some circumstances might have been excluded as hearsay. (*People* v. *Rodley,* 131 Cal. 240, 254-255 [63 P. 351]; *People* v. *Kalkman,* 72 Cal. 212, 215 [13 P. 500]; *People* v. *Huston,* 163 Cal. App.2d 363, 366 [329 P.2d 334]; *People* v. *Alexander,* 41 Cal. App.2d 275, 281 [106 P.2d 450, 916]; 6 Wigmore, Evidence

(3d ed. 1940) § 1732, p. 103; 19 Cal.Jur.2d, Evidence, § 392, pp. 127-128.)

There was no objection to the receipt of the tape recording by the prosecutor.

Without reciting all of the admissions, suffice it to say that there were several admissions made by the defendant to one of the officers, i.e. "Let's get the stuff now. I have an outfit and we can shoot it now." (Health & Saf. Code, §§ 11501, 11503.)

Where there is testimony of what the accused said out of court to officers the instruction must be given. (*People* v. *Deloney*, 41 Cal.2d 832, 840 [264 P.2d 532]; *People* v. *Riley*, 35 Cal.2d 279, 286 [217 P.2d 625]; *People* v. *Bemis*, 33 Cal. 2d 395, 399 [202 P.2d 82]; Code Civ. Proc., § 2061, subd. 4.)

The appellant offered the following instruction:

"If the defendant at the time of the transaction in question was not working under the actual immediate direction, supervision or instruction of a duly authorized police officer, the defendant is nonetheless immune from prosecution if the defendant, at the time of the transaction, reasonably believed from all the circumstances, that he was working under the immediate direction, supervision or instruction of a duly authorized police officer."

It was refused.

Section 11710, Health and Safety Code, reads as follows: "[IMMUNITY FROM PROSECUTION.] All duly authorized peace officers, while investigating violations of this division in performance of their official duties, and any person working under their immediate direction, supervision or instruction, are immune from prosecution under this division." (See *People* v. *Benford*, 53 Cal.2d 1, 14 [345 P.2d 928].)

Appellant's belief is not the standard—his state of mind is not that which determines whether it was reasonable or not. Had appellant wanted a proper instruction under the circumstances he should have submitted such a proper instruction. This he did not do and to say now that the judge should have corrected and modified the instruction which was submitted to make it proper is wholly unfair to the judge and society. If we were to have the laws of the state with reference to narcotic offenses determined by what narcotic addicts themselves think such laws should be, then we would indeed be in trouble.

"The court will take judicial notice of the fact that the inordinate use of a narcotic drug tends to create

an irresistible craving and forms a habit from its continued use until one becomes an addict, and he respects no convention or obligation and will lie, steal, or use any other base means to gratify his passion for the drug, being lost to all considerations of duty or social position. [Citation omitted.] The unlawful use of narcotic drugs often tends to moral, mental and physical destruction." (*People* v. *Jaurequi* (1956) 142 Cal.App.2d 555, 561 [298 P.2d 896].)

 The determination of reasonableness should be made in relation to a standard of a reasonable man and not one which exclusively exists in the deranged mind of a narcotic addict.

The court did in fact give three proper instructions on the matter of immunity.[1]

The order denying the motion for a new trial and the judgment are and each is affirmed.

Wood, P. J., and Lillie, J., concurred.

A petition for a rehearing was denied March 14, 1962, and appellant's petition for a hearing by the Supreme Court was denied April 25, 1962.

---

[1]"All duly authorized peace officers, while investigating violations of Sections 11,000 through 11,730 of the Health and Safety Code in performance of their official duties, and any person working under their immediate direction, supervision or instruction, are immune from prosecution under such code sections."

2. "The immunity provisions of Section 11,710 of the Health and Safety Code are applicable in this case only if you as judges of the facts find from the evidence that Officer Hairston [*sic*] under color of his authority as a police officer directed or instructed the defendant to commit the acts constituting the offense charged against the defendant and that defendant Earl Chester Jones in committing the act intended to operate as a government agent, decoy or informer. If on the other hand, you find from the evidence, that Defendant Jones at the time of committing the acts constituting the offense did not know that Billy Hairston [*sic*] was a police officer and that defendant Jones thought he was dealing with a private individual seeking to purchase contraband narcotics, then the fact that Officer Hairston [*sic*] gave the defendant money and the opportunity of committing the crime charged against him, will not cloak the defendant with the immunity provisions of Section 11,710 of the Health and Safety Code."

3. "If the jury has a reasonable doubt whether the defendant was working under the immediate direction, supervision or instruction of a duly authorized peace officer at the time of committing the acts charged against him in the Indictment, the jury must give the defendant the benefit of that doubt and acquit him."