Filed 2/27/24  P. v. Park CA1/1
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>THOMAS HENDRICKS PARK,<br><br>    Defendant and Appellant. | A166515<br><br>(Sonoma County<br>Super. Ct. No. SCR-747806-1) |

Upon discovering his girlfriend kissing another man, Thomas Hendricks Park repeatedly punched the man in the face, seriously injuring him.  A jury convicted Park of battery with serious bodily injury and found true an allegation that he personally inflicted great bodily injury in the commission of the offense.  (Pen. Code,[1] §§ 243, subd. (d), 667, 1192.7.)  The trial court placed him on probation for three years.

Park appeals.  He contends the trial court erred by permitting a prosecution witness to testify about his motivation for initiating the altercation.  He also insists the court erred by imposing a three-year probation term.  We reject his first claim but agree with his second.  We conclude Park's probation term must be reduced to two years.  As modified, we affirm.

---

[1] Undesignated statutory references are to the Penal Code.

# I. BACKGROUND

The prosecution charged Park with battery with serious bodily injury (§ 243, subd. (d)) and alleged he personally inflicted great bodily injury in the commission of the battery (§§ 667, 1192.7). The prosecution also charged him with assault by means likely to produce great bodily injury (§ 245, subd. (a)(4)) and alleged he inflicted great bodily injury (§ 12022.7, subd. (a)) in the commission of the assault. It also alleged various aggravating factors. Park's first trial ended in a mistrial due to juror unavailability.

## A. *Retrial Testimony*

In July 2021, Megan M. and Park were in a monogamous relationship. They lived together in Petaluma with their roommate, M.F. In mid-July, Megan—who worked for a distillery—and her work acquaintance, Ricardo J.—who worked for a liquor distributor—spent a portion of their workday making sales calls and meeting clients. That evening, they met Park at a bar. Ricardo had spent time with Megan and Park on at least one other occasion; they had a good rapport. After consuming numerous drinks, Megan, Park, and Ricardo went back to Megan and Park's house. M.F.—who let them in the house—immediately noticed that all three were "very intoxicated," and that Ricardo seemed disoriented. M.F. returned to her bedroom and went to sleep.

Later, M.F. awoke and went into the living room to check on her cat. There, she saw Megan "straddling someone" on a loveseat. M.F. could not see the other person; she assumed it was Park, and that he and Megan were "making out." M.F. turned away, resumed looking for her cat, and went to the bathroom. When she emerged from the bathroom, she crossed paths with Park, then continued on to her bedroom and got back into bed. Seconds later,

2

she heard a "commotion" in the living room and realized the person Megan had been straddling was Ricardo—not Park.

M.F. returned to the living room, where she saw Park punching Ricardo and heard Park saying, " 'you fucking bitch.' "  Ricardo's face was bleeding; he was moaning in pain.  M.F. was concerned about Ricardo because he was "clearly injured."  Both women pled with Park to stop.  Eventually, M.F. separated the two men.  Park calmed down, "apologized profusely," and tried to help Ricardo.  M.F. did not believe Ricardo posed a threat to Megan.  M.F. believed Park's jealousy prompted the altercation.

M.F. called 911.  When the police arrived, Park instructed Megan not to speak to them, but she did so anyway, telling them Ricardo had been "handsy" with her.  Megan—who seemed drunk and was not communicating clearly—also told an officer that Ricardo had jumped on her and kissed her, and that Park had pulled him off of her.  Paramedics arrived and took Ricardo to the hospital.  He was in "[e]xcruciating pain"; he had multiple broken bones in his face.  He did not remember leaving the bar, kissing Megan, or being punched by Park.

Defense witnesses offered testimony that Ricardo was "very intoxicated" when he joined Megan and Park at the bar.  At the bar, Ricardo grabbed Megan's head, and Park "stepped in and told him to back off."  After they returned home, Megan fell asleep in the living room.  When she awoke, Ricardo's hand was on her stomach, and his face was pressed against hers.  She was too intoxicated to resist.  Park had left the living room to get ready for bed.  He heard Megan making noises and thought she was in distress, so he returned to the living room and tried to pull Ricardo off of her.  Ricardo "lunged" at Park; he also headbutted Megan and bruised her arm.  Park punched Ricardo three or four times.  Megan could not recall many details

3

from the evening; she acknowledged not knowing "exactly [what was] going on at the time."

## B. Verdict and Sentencing

The jury convicted Park of battery with serious bodily injury and found true the allegation that he personally inflicted great bodily injury on Ricardo. (§§ 243, subd. (d), 667, 1192.7.)  The jury acquitted Park of aggravated assault, and the trial court dismissed the aggravating factors.

The probation department recommended suspending imposition of judgment and placing Park on three years of probation with various conditions.  The parties agreed with this recommendation.  At the October 2022 sentencing hearing, the trial court suspended imposition of sentence and placed Park on probation for three years with conditions.

## II.  DISCUSSION

Park raises two claims on appeal, one directed at his conviction and another challenging his sentence.  We address each argument in turn.

## A.

Park first contends the trial court erred by allowing M.F. to testify that jealousy motivated Park's attack on Ricardo.  According to Park, the testimony lacked "foundation and amounted to speculation."  We disagree.[2]

To place the issue in context, we provide additional background.  On direct examination, the prosecutor asked M.F. whether she witnessed the alleged assault; she answered in the affirmative.  Then the prosecutor asked whether she had an opinion—based on what she knew about Park and Ricardo and what she had seen that evening—as to "the motive for this

---

[2] Because the Attorney General does not argue forfeiture, we address this argument on the merits notwithstanding defense counsel's failure to object to the prosecutor's second question about Park's motive.

interaction." M.F. testified her "interpretation" was that Park saw Megan and Ricardo "kissing and got jealous and mad." The trial court, however, sustained defense counsel's objection and struck her answer.

Thereafter, the prosecutor explained to M.F. that he wanted her "opinion based on everything that [she knew]. Just the motive, not what other people may or may not have seen." Then the prosecutor asked, "What is your opinion as to the motive for what you saw that night?" M.F. responded, "Jealousy." She testified she was confident about what she had seen. On cross-examination, M.F. acknowledged she did not see how the altercation began, but she explained it was her "belief" that Park's motive was jealousy. And she rejected defense counsel's suggestion that she was hazarding a "guess" as to Park's motivation.

A lay witness may testify in the form of an opinion if the opinion is based on their own perception and helpful to a clear understanding of their testimony. (*People v. Farnam* (2002) 28 Cal.4th 107, 153; Evid. Code, § 800.) Although " '[a] lay witness generally may not give an opinion about another person's state of mind, [the witness] may testify about objective behavior and describe behavior as being consistent with a state of mind.' " (*People v. Sánchez* (2016) 63 Cal.4th 411, 456.) We review a trial court's decision to admit evidence for abuse of discretion. (*People v. Seumanu* (2015) 61 Cal.4th 1293, 1311 (*Seumanu*).)

Applying these principles, numerous courts have held a trial court does not abuse its discretion by allowing a witness to describe behavior as consistent with a particular state of mind. (*Seumanu*, *supra*, 61 Cal.4th at pp. 1309–1311 [no abuse of discretion in allowing witness to testify that his cellmate "did not appear angry"]; *People v. Weaver* (2012) 53 Cal.4th 1056, 1086 (*Weaver*) ["testimony that defendant displayed hatred" was not "an

improper opinion based on speculation"]; *People v. Chatman* (2006) 38 Cal.4th 344, 397 [no error in allowing witness to testify the defendant " 'seemed to be enjoying' " kicking the victim]; *People v. Deacon* (1953) 117 Cal.App.2d 206, 210 [testimony that voices sounded "angry" was admissible].)

So too, here. M.F.'s testimony was based on her personal knowledge of Megan's relationship with Park and on her perception of the evening's events. M.F. saw Megan having an "intimate" moment with a person on a loveseat. Initially, M.F. assumed the person was Park, but she later realized it was Ricardo. After M.F. got back into bed, she heard a commotion, and heard Park say " 'you fucking bitch.' " She returned to the living room and saw Park punch Ricardo multiple times. As a percipient witness, M.F. was competent to testify that she believed Park was motivated by jealousy when he attacked Ricardo. (*Weaver*, *supra*, 53 Cal.4th at p. 1086 [no abuse of discretion in admitting evidence that defendant was " 'hostile' " toward, and " 'really angry' " at, the victim].) Additionally, her opinion about Park's motive was helpful to a clear understanding of her description of the altercation. (*People v. Farnam*, *supra*, 28 Cal.4th at p. 153.) Park's challenge to the reliability of M.F.'s testimony " 'goes to the weight of the evidence, and not its admissibility.' " (*People v. Dalton* (2019) 7 Cal.5th 166, 232 [description of victim's devotion toward her children was admissible to support inference that she would not abruptly abandon them].)

We conclude "the trial court acted within its discretion in admitting this evidence." (*Weaver*, *supra*, 53 Cal.4th at p. 1086; *Seumanu*, *supra*, 61 Cal.4th at p. 1311.) Because there was no error under state law, Park's "federal constitutional claim is meritless." (*Seumanu*, at p. 1311.) And

having determined the court did not err, we need not evaluate Park's prejudice argument.

B.

Park next contends—and the Attorney General concedes—the trial court erred by imposing a three-year probation term. We agree. Section 1203.1, subdivision (a) limits the maximum term of probation for most felony offenses to two years. (See *People v. Prudholme* (2023) 14 Cal.5th 961, 965–966.) There are certain exceptions to the two-year limit—for example, the court may impose a longer probationary period for violent felonies and felonies with specified statutory probation lengths—but neither exception applies here. (See § 1203.1, subd. (*l*)(1).)[3]

The Attorney General concedes error, but nonetheless argues the claim "is forfeited by [Park's] invited error and failure to object." " 'The doctrine of invited error is designed to prevent an accused from gaining a reversal on appeal because of an error made by the trial court at his behest. If defense counsel intentionally caused the trial court to err, the appellant cannot be heard to complain on appeal.' " (*People v. Coffman and Marlow* (2004) 34 Cal.4th 1, 49.) "Error is invited only if defense counsel affirmatively causes the error and makes 'clear that [he] acted for tactical reasons and not out of ignorance or mistake' or forgetfulness." (*People v. Lara* (2001) 86 Cal.App.4th 139, 165.)

We decline to apply the invited error doctrine for two reasons. First, defense counsel did not affirmatively cause the error. The probation

---

[3] The jury's finding that Park inflicted great bodily injury in the commission of the battery within the meaning of sections 667 and 1192.7 rendered the conviction a " 'serious felony,' " but not a " 'violent felony.' " (Compare §§ 667, subd. (a)(4) & 1192.7, subd. (c)(8) with § 667.5, subd. (c)(8).) Section 243 does not specify a probation length.

7

department—not defense counsel—suggested the three-year probationary term. Defense counsel's agreement with probation's recommendation does not constitute invited error. (See *People v. Bell* (2019) 7 Cal.5th 70, 109.) Second, the record does not clearly show defense counsel had a " 'deliberate tactical purpose' " for agreeing with probation's recommendation. (*Ibid.*) At the conclusion of the sentencing hearing, the court noted, "I think counsel have agreed that the personal infliction of great bodily injury allows departure from the normal two-year formal probation period," but we find no support for this statement in defense counsel's sentencing memorandum or in the transcript of the sentencing hearing.

The Attorney General also asserts the argument is forfeited. The forfeiture doctrine provides that " 'an appellate court will not consider claims of error that could have been—but were not—raised in the trial court.' " (*People v. Stowell* (2003) 31 Cal.4th 1107, 1114.) But when—as here—an error results in an unauthorized sentence, the "error . . . is not subject to forfeiture." (*People v. Cabrera* (2018) 21 Cal.App.5th 470, 477.) It is well settled an "unauthorized sentence may be corrected at any time by a court with jurisdiction." (*Ibid.*)

We reject the Attorney General's fleeting suggestion, unsupported by authority, that the sentence is not "unauthorized" because it could "be lawfully imposed under certain circumstances under section 1203.01, subdivision (*l*)(1)." This argument misses the point. Under the circumstances at issue *here*, the three-year probationary term was unauthorized. (See *People v. Prudholme*, *supra*, 14 Cal.5th at p. 974 [plea agreement imposing probationary term in excess of two years was "unauthorized"].) Even were we to assume for the sake of argument Park forfeited a challenge to the length of his probation term, we would exercise

our discretion to consider "the issue on the merits to forestall a claim of ineffective assistance of counsel." (*People v. Lua* (2017) 10 Cal.App.5th 1004, 1014.)

For the foregoing reasons, we reduce Park's probationary term to two years pursuant to section 1203.1, subdivision (a). (§ 1260; *People v. Quinn* (2021) 59 Cal.App.5th 874, 879, 885.)

### III.  DISPOSITION

The October 27, 2022 sentencing minute order is modified to impose a two-year probation term instead of a three-year probation term (§ 1203.1, subd. (a)).  As modified, the judgment is affirmed.

CASTRO, J.*

WE CONCUR:


HUMES, P. J.


LANGHORNE WILSON, J.


A166515
*People v. Park*

---

* Judge of the Alameda County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

10